JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Julia W. Rielinger (Julia) appeals the trial court's issuance of a domestic violence civil protection order, its certification of the issue of parental rights and responsibilities to the Juvenile Division, and also its rulings on a motion to intervene, a motion for appointment of a guardian ad litem, and a motion for an in camera interview. For the following reasons, we affirm.
 {¶ 2} Joseph M. Rielinger (Joseph) and Julia married on October 28, 1995 and three children were born as issue of the marriage: Child 1, born February 21, 1997; Child 2, born March 26, 1999; and Child 3, born March 19, 2001.[1]
 {¶ 3} On November 18, 2005, Joseph filed a complaint for divorce against Julia, an emergency motion for temporary legal custody, and a motion for a restraining order.
 {¶ 4} The trial court granted Joseph's motion for a restraining order the same day, restraining Julia from removing the children from Cuyahoga County and granting Joseph temporary possession of the children.
 {¶ 5} The trial court also granted Joseph exclusive temporary legal custody of the children until Julia submitted her passport and those of the *Page 4 
children, in light of the fact Julia is a Chinese citizen and expressed her intention to take the children to China.
 {¶ 6} Also on November 18, 2005, Julia filed an ex parte domestic violence civil protection order against Joseph in case number DV-05-307861, issued the same day but thereafter dissolved on February 1, 2006.
 {¶ 7} On November 23, 2005, the trial court declared null and void its order granting Joseph exclusive temporary legal custody because Julia submitted her passport and visa and those of the children.
 {¶ 8} On December 16, 2005, Julia filed an answer and counterclaim for divorce.
 {¶ 9} On February 22, 2006, Joseph and Julia filed their agreement pertaining to possession of the children and division of property.
 {¶ 10} On April 19, 2006, Joseph filed an emergency motion for temporary legal custody of the children, and the trial court referred the matter to Family Conciliation Services.
 {¶ 11} Trial commenced on December 14, 2006.
 {¶ 12} On January 11, 2007, Janice Rielinger (Janice), Joseph's mother, filed a motion to intervene because she desired to obtain shared legal custody of the children with Joseph, which motion was granted January 24, 2007.
 {¶ 13} On February 22, 2007, Janice filed an ex parte petition for a domestic violence civil protection order, issued by the trial court the same day *Page 5 
and set for hearing on March 8, 2007, and eventually rescheduled to March 15, 2007.
 {¶ 14} On February 26, 2007, Julia filed a motion for appointment of a guardian ad litem and for an in camera interview of Child 1, denied by the trial court on February 28, 2007.
 {¶ 15} On March 2, 2007, Julia filed a domestic violence civil protection order against Joseph in Portage County, case number 2007 DR-00116, despite this case pending in Cuyahoga County. At this point Joseph and Janice had not seen or spoken to the children and were unaware of their whereabouts for approximately two months. The record reveals that Julia removed the children from North Royalton Schools and was residing with them in a women's domestic violence shelter in Portage County.
 {¶ 16} On March 15, 2007, the parties pretried Janice's domestic violence civil protection order without reaching any resolve. Julia called earlier that morning and said that she could not appear, however, Julia appeared after all. The trial court then scheduled the matter for hearing the following day.
 {¶ 17} On March 16, 2007, counsel for Julia requested a continuance arguing that her client was hospitalized because of a panic attack and unable to attend. The trial court denied her motion to continue and conducted the remainder of the hearing. *Page 6 
 {¶ 18} On March 20, 2007, the Portage County matter was transferred to Cuyahoga County Common Pleas Court, Domestic Division, for consolidation with DR-05-307881, at which point all three cases, namely, DR-05-307881, DV-05-307861, and 2007 DR-00116 were consolidated.
 {¶ 19} On April 20, 2007, the magistrate issued her decision, thereafter adopted by the trial court, in which the civil protection order issued on February 22, 2007, would remain in full force and effect "as modified by the attached full hearing protection order, until 03/15/12 ***," to include all three children.
 {¶ 20} On October 3, 2007, the trial court issued a final divorce decree and certified the issues of allocation of parental rights and responsibilities to the Cuyahoga County Court of Common Pleas, Division of Juvenile Court, finding neither parent suitable for custody.
 {¶ 21} Julia appeals, asserting four assignments of error for our review.
ASSIGNMENT OF ERROR NUMBER ONE "The trial court erred and abused its discretion in adopting the magistrate's decision, dated April 20, 2007, issuing a civil protection order."
 {¶ 22} Julia argues that the trial court erred when it adopted the April 20, 2007 magistrate's decision issuing a civil protection order. Specifically, she argues that the magistrate should have granted her motion to continue and that the magistrate's decision was not supported by sufficient evidence.
A. Motion to Continue *Page 7 {¶ 23} We review motions to continue upon an abuse-of-discretion standard. O'Brien v. O'Brien, Cuyahoga App. No. 89615, 2008-Ohio-1098. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 24} According to the Supreme Court of Ohio, we look at the following factors when reviewing a motion to continue:
 "[T]he length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors." State v. Unger (1981), 67 Ohio St.2d 65.
 {¶ 25} Pursuant to R.C. 3113.31(D)(2)(a), under any of the following circumstances, the trial court may grant a continuance of a full civil protection order hearing on the following grounds and for a reasonable time:
 "(i) Prior to the date scheduled for the full hearing under this division, the respondent has not been served with the petition filed pursuant to this section and notice of the full hearing.
 (ii) The parties consent to the continuance.
 (iii) The continuance is needed to allow a party to obtain counsel.
 (iv) The continuance is needed for other good cause." *Page 8 
 {¶ 26} Thus, it is clear that the only ground upon which the trial court could grant a continuance is for "other good cause" pursuant to R.C. 3113.31(D)(2)(a)(iv). In light thereof, we proceed to apply theUnger factors to the case sub judice.
 {¶ 27} The record reveals that as of March 16, 2007, Julia already filed multiple motions to continue for reasons that included disputes she had with her counsel and another because of her inability to find child care.
 {¶ 28} Regarding the March 16, 2007, full hearing and the inconvenience posed upon witnesses, counsel, and the court, we note that Child 1 was excused from school both March 15, 2007 and March 16, 2007. An additional continuance would have posed an even greater detriment to her education. Furthermore, Janice, both counsel, and Paul Tomashefski (Tomashefski), a school counselor who took time off of work to attend, would all be inconvenienced.
 {¶ 29} Whether Julia's hopitalization was legitimate or dilatory, purposeful, or contrived, the trial court stated the following after Julia's counsel requested a continuance:
 "COURT:
 [A]re you aware that your client called the Court yesterday and indicated to the Court she wouldn't be able to appear for *Page 9 another reason and she did appear after all the — for yesterday's hearing?" (Tr. 9.)
 {¶ 30} This statement demonstrates the trial court's doubts as to the legitimacy of Julia's hospitalization based upon her prior conduct the day before regarding a scheduled hearing.
 {¶ 31} Additional relevant factors must be considered in this case, including the fact that there is no statutory right to be present at the full hearing, although preferable in circumstances such as these. Despite her absence, Julia's counsel still cross-examined witnesses presented against her and had the opportunity to present her own witnesses had she so chosen. Additionally, Joseph and Julia agreed to set the hearing for March 16, 2007.
 {¶ 32} Notably also, Julia's and the children's whereabout were unknown for the prior two months. Joseph and Janice did not have contact with all three children during this time; thus, time was of the essence in this particular matter.
 {¶ 33} Therefore, the trial court did not err and abuse its discretion when it denied Julia's motion to continue.
B. Civil Protection Order Generally *Page 10 {¶ 34} We proceed to address Julia's assertion that the trial court erred when it issued a civil protection order against her. Our standard of review for issuance of civil protection orders is as follows:
 "The standard of review for issuing a CPO is whether the petitioner has shown, by a preponderance of the evidence, that he or she, or a family or household member, was in danger of domestic violence. When the respondent contends that it was error to issue a protection order, the question on review is whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence. The review, therefore, is de novo." Vasile v. Marinescu, Cuyahoga App. No. 86953, 2006-Ohio-1739. (Internal citations omitted.)
 {¶ 35} Furthermore, "domestic violence" includes:
 "[T]he occurrence of one or more of the following acts against a family or household member: *** Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 [2151.03.1] of the Revised Code ***." R.C. 3113.31(A)(1)(c).
 {¶ 36} "Family or household member" means "[a]ny of the following who is residing with or has resided with the respondent: *** a child of the respondent ***." R.C. 3113.31(A)(3)(a)(ii). Child 1, Child 2, and Child 3 constitute family or household members because they resided with Julia and are Julia's children.
 {¶ 37} A child is an abused child when he or she:
 "(A) Is the victim of `sexual activity' as defined under Chapter 2907 of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child; *Page 11 
 (B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;
 (C) Exhibits evidence of any physical or mental injury ***, inflicted other than by accidental means, or an injury *** which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control *** of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.
 (D) Because of the acts of his parents ***, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.
 (E) Is subjected to out-of-home care child abuse." R.C. 2151.031.
C. Civil Protection Order and Child 1 {¶ 38} Julia argues that there lacks sufficient credible evidence that she engaged in acts or threats of domestic violence against Child 1 because the child's testimony was ambiguous, conflicting, and of little probative value.
 {¶ 39} A review of the record reveals that Child 1 was ten years old when she testified at the hearing. (Tr. 11.) Child 1 testified that she asked Julia for permission to call Joseph and that Julia became angry and began hitting her and pushing her. (Tr. 41-42.) Child 1 testified that Julia pushed her into the *Page 12 
Christmas tree and she sustained bruises on her arm, leg, and hip as a result. (Tr. 42, 51.) Child 1 further stated that Julia hit and pushed her on purpose. (Tr. 48.)
 {¶ 40} Child 1 also testified that, on another day, Julia threw her out into the snow. (Tr. 58.) Child 1 testified that she is scared when she stays at Julia's house, that Julia calls her "bad names," meaning words that she cannot say at court, and that the incident at Christmas is not the first time that Julia has hit her. (Tr. 16, 21, 37.)
 {¶ 41} The testimony of Child 1 is further bolstered by Janice's and Tomashefski's testimony. Janice testified that she saw bruises on Child 1's arm, leg and hip relating to the Christmas incident. (Tr. 98.)
 {¶ 42} Tomashefski testified that Child 1 lived with Joseph from August 2006 until Christmas 2006 and missed a minimal number of school days. (Tr. 64.) Thereafter, Child 1 was absent or tardy for nineteen days while residing with Julia through March 13, 2007. (Tr. 65.)
 {¶ 43} At the end of February 2007, Child 1 stopped attending school all together. Julia removed the children from school without explanation and removed the children from the residential home. Their whereabouts were unknown. Joseph did not see the children for almost two months. (Tr. 103, 106.) *Page 13 
 {¶ 44} While residing with Julia, Child 1 appeared disheveled or unkempt, did not attend scheduled counseling, and did not socialize well with classmates. (Tr. 66, 69.)
 {¶ 45} Julia also argues that there lacks sufficient credible evidence of domestic violence because Joseph failed to present any medical records or other documentation of abuse against Child 1. However, Julia fails to demonstrate that documentation is required for a finding of domestic violence.
 {¶ 46} Julia also contends that the trial court failed to consider the following evidence: Child 1's history of acting out; corporal punishment as a valid defense to a charge of domestic violence; and lastly, that her actions constituted reasonable parental discipline. However, Julia fails to present evidence in support thereof.
 {¶ 47} Therefore, we find that there was sufficient credible evidence to support a finding that Julia engaged in acts of domestic violence against Child 1 under R.C. 2151.031(B), (C), and (D).
D. Civil Protection Order and Child 2 and Child 3 {¶ 48} Julia argues that there lacks sufficient credible evidence that she engaged in acts or threats of domestic violence against Child 2 and Child 3 because there is no evidence of the following: physical or mental injury, substantial risk to health or safety, or need of protection. *Page 14 
 {¶ 49} However, similar to Child 1, Child 2 and Child 3 missed an exorbitant number of school days while residing with Julia. Child 2 was absent, tardy, or left early thirty-eight times while residing with Julia. (Tr. 67.) Like Child 1, Child 2 was scheduled to attend counseling with Tomashefski. (Tr. 68.) However, because of her extensive absences, she was only able to attend a couple of sessions. (Tr. 68.)
 {¶ 50} Child 3 was also absent, tardy, or left early thirty-six times while residing with Julia. (Tr. 68.) Tomashefski testified that Child 2 and Child 3 were not only unkempt, but even dirty and expressed concern not only for their academic growth but also for their well-being and emotional safety. (Tr. 69-70.) Janice testified regarding her concern for the children's safety as well. (Tr. 105.)
 {¶ 51} Like Child 1, Child 2 and Child 3 stopped attending school in February 2007, and their whereabouts had been unknown. As of the March 16, 2007 hearing, Joseph and Janice did not see or have contact with the children in over two months.
 {¶ 52} Thus, we find that there was sufficient credible evidence to support a finding that Julia engaged in acts of domestic violence against Child 2 and Child 3 under R.C. 2151.031(D), and the trial court did not err in adopting the magistrate's decision issuing the civil protection order.
ASSIGNMENT OF ERROR NUMBER TWO *Page 15 "The trial court erred and abused its discretion in certifying the issue of parental rights and responsibilities to juvenile court instead of declaring the defendant-appellant the primary residential parent of the parties' minor children."
 {¶ 53} Julia argues that the trial court erred when it certified the issue of parental rights and responsibilities to the Cuyahoga County Court of Common Pleas, Juvenile Division, instead of declaring her the primary residential parent of the children.
 {¶ 54} In the case sub judice, the trial court certified all issues pertaining to allocation of parental rights and responsibilities to the Juvenile Division pursuant to R.C. 3109.06, which provides that:
 "Any court, other than a juvenile court, that has jurisdiction in any case respecting the allocation of parental rights and responsibilities for the care of a child under eighteen years of age and the designation of the child's place of residence and legal custodian or in any case respecting the support of a child under eighteen years of age, may, on its own motion ***, with the consent of the juvenile court, certify the record in the case *** to the juvenile court for further proceedings; upon the certification, the juvenile court shall have exclusive jurisdiction."
 {¶ 55} The Supreme Court of Ohio has held: "In proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important." Trickey v. Trickey (1952),158 Ohio St. 9. *Page 16 
 {¶ 56} "We will therefore review the trial court's order under an abuse of discretion standard." Satterfield v. Satterfield (2001), Lorain App. No. 00CA007746. Moreover,
 "The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record. *** This court has repeatedly held that in an appeal on question of law the court of Appeals can not substitute its judgment for the judgment of the trial court." Trickey at 13-14.
 {¶ 57} Julia argues that the best interest of the children requires that she be declared the primary residential parent. However, unlike R.C. 3109.04(D), certification pursuant to R.C. 3109.06 does not require a finding that the best interest of the child is for neither parent to have custody of the child. In re Whaley (1993), 86 Ohio App.3d 304.
 {¶ 58} "Under R.C. 3109.06, the domestic relations court may *** certify an action to the juvenile court if it obtains the juvenile court's consent or finds the parents unsuitable." Pawul v. Pawul (1993), Cuyahoga App. No. 64650.
 {¶ 59} Here, the trial court found both parents unsuitable. The trial court cited to the same facts as set forth in Julia's first assignment of error in finding her unsuitable.
 {¶ 60} We also take note of the following: The Department of Children and Family Services are involved in this matter and, after visiting Julia and the children at home, found the children in a state of undress and the home dirty *Page 17 
and smelling of trash; Julia removed the children from North Royalton Schools without providing Joseph or North Royalton Schools notice of their whereabouts; Melissa was not up to date on her vaccinations; the trial court confiscated Julia's passports and those of the children to prevent Julia from removing the children to China.
 {¶ 61} An assigned Clinical Social Worker at Family Conciliation Services wrote the following:
 "I have completed 6 ½ hours of clinical interview with this entrenched and difficult family. *** Based upon my clinical impressions, observations, and based upon the information provided, this writer believes that both parents are limited. *** Mom who is not in treatment but remains confused, obsessive, and manipulative has problems with organizations and she is not honest, according to school officials." (Ex. 2.)
 {¶ 62} The trial court also cited to Joseph's severe depression and Crohns disease in support of its finding that Joseph is also unsuitable. The record reveals that Joseph suffers periods of illness in which he cannot fully function:
 "Dad is on disability for chronic depression that is secondary to his Crohns Disease ***. He has had multiple hospitalizations for both disorders and is on [medication] for his depression. He is also on meds for his Crohns Disease ***." (Exhibit 2.)
 {¶ 63} In support thereof, Family Conciliation Services recommended that Joseph should not be the primary custodial parent alone, but rather with Janice: *Page 18 
 "Q. Well, what I am asking you is this, you know that this man [Joseph] cannot parent those children without help?
 A. That is true." (Tr.12/14/06 at 121.)
 {¶ 64} Therefore, the trial court did not err and abuse its discretion when it certified allocation of parental rights and responsibilities to the Juvenile Division.
 {¶ 65} Julia's second assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER THREE "The trial court erred and abused its discretion by granting petitioner's motion to intervene in the divorce proceedings."
 {¶ 66} Julia argues that the trial court erred when it granted Janice's motion to intervene.
 {¶ 67} We review motions to intervene upon an abuse-of-discretion standard. In re Stapler (1995), 107 Ohio App.3d 528. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 68} Civ. R. 24 addresses motions to intervene, however, Civ. R. 75(B) disallows application of Civ. R. 24 in divorce actions: *Page 19 
 "Civ. R. 14, 19, 19.1 and 24 shall not apply in divorce, annulment, or legal separation actions, however:
 (1) A person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, may be made a party defendant;
 (2) When it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs;
 (3) When child support is ordered, the court, on its own motion or that of an interested person, after notice to the party ordered to pay child support and to his or her employer, may make the employer a party defendant."
 {¶ 69} Although Janice did not cite to Civ. R. 24, Civ. R. 75, or any other authority in her motion to intervene, she did state her intent to seek shared legal custody of the children with Joseph in her motion.
 {¶ 70} Notably, Domestic Relations Loc. R. 17(D)(4) requires the filing and granting of a motion to intervene where a nonparty seeks allocation of parental rights and responsibilities and reads as follows:
 "Any person who is not already a party who is seeking an allocation of parental rights and responsibilities for the care of a child must file and have granted a motion to intervene prior to filing a motion requesting such allocation. The motion to intervene shall be granted ex parte unless it is determined by the assigned judgment that such motion should be set for hearing." *Page 20 
 {¶ 71} As such, we cannot find that the trial court abused its discretion when it granted Janice's motion to intervene.
 {¶ 72} Julia's third assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER FOUR "The trial court erred and abused its discretion in denying defendant-appellant's motion for in camera interview of the minor child, [Child 1], and motion for appointment of guardian ad litem."
 {¶ 73} Julia argues that the trial court erred and abused its discretion when it denied her motion for an in camera interview of Child 1 and her motion for appointment of a guardian ad litem.
 {¶ 74} We review motions for appointment of a guardian ad litem under an abuse-of-discretion standard. In re Dennis, 11th Dist. No. 2006-A-0040, 2007-Ohio-2432.
 {¶ 75} Regarding in camera interviews, R.C. 3109.04(B)(1) reads as follows:
 "In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." *Page 21 
 {¶ 76} However, in light of our ruling on Julia's second assignment of error, her fourth assignment of error is moot. Certifying jurisdiction of this matter to juvenile court pursuant to R.C. 3109.06 does not require a finding regarding the children's best interest.
 {¶ 77} Julia's fourth assignment of error is moot.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and LARRY A. JONES, J., CONCUR
[1] It is this court's policy to protect the identities of minor children. *Page 1