[Cite as *In re E. A.*, 2014-Ohio-280.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.A. | : | APPEAL NO. C-130041<br>TRIAL NO. F12-538(X) |
| | : | |
| | : | *O P I N I O N.* |

Civil Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  January 29, 2014

*Morence & Buchenau, LLC,* and *Nancy R. Lorence,* for Appellant,

*Donnellon, Donnellon & Miller,* and *Robert T. Butler,* for Appellee.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}     In three assignments of error, appellant mother claims that the trial court erred when it granted custody of her daughter, E.A., to the child's father. We affirm.

{¶2}     E.A. was born in 2006. She has lived with her mother for her whole life. For the first three years, father was actively involved. In 2009, father's wife moved to the United States from Africa, and insisted that father have no further contact with E.A. or mother. After that, father's contact with the child was limited to a few instances. Mother subsequently moved to Pennsylvania and took E.A. with her.

{¶3}     Father petitioned the trial court for custody of E.A. The case was first set for a pretrial conference on February 22, 2012. Mother called and requested a continuance, presumably seeking time to obtain counsel. Both parties attended the subsequent pretrial conference on June 14. At that time, the parties were informed that the matter would proceed to a hearing on the merits on September 4. On August 31, mother sent an email to the court indicating that she could not attend the hearing and asking that she be allowed to participate via video conference or, alternatively, that the case be moved to Pennsylvania. Mother did not attend the hearing. The magistrate treated the email as a motion for a continuance, which he denied. The magistrate conducted the merits hearing and, after hearing testimony from father, granted him custody of E.A. The trial court overruled mother's objections to the magistrate's decision.

**Conducting the Merit Hearing without Mother
was not an Abuse of Discretion**

{¶4}     In her first assignment of error, mother claims that the trial court abused its discretion when it denied her motion for a continuance.  This court will not easily find that a trial court abused its discretion.  An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).  As the Tenth Appellate District recently noted:

> It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). A decision is unreasonable if there is no sound reasoning process that would support that decision. *Id.* It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *Id.* An abuse of discretion implies that a decision is both without a reasonable basis and is clearly wrong. *Hartzog v. Ohio State Univ.*, 27 Ohio App.3d 214, 27 Ohio B. 254, 500 N.E.2d 362 (10th Dist.1985), citing *Angelkovski v. Buckeye Potato Chips Co., Inc.*, 11 Ohio App.3d 159, 11 Ohio B. 242, 463 N.E.2d 1280 (10th Dist.1983).

*Aetna Better Health, Inc. v. Colbert*, 10th Dist. Franklin No. 12AP-720, 2012-Ohio-6206, ¶ 21.

{¶5} In evaluating a motion for a continuance, a court should consider the length of the delay requested, whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court, the reason for the delay, whether the party contributed to the circumstances which give rise to the request for a continuance, and any other relevant factors depending on the circumstances of each case. *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981). When considering the propriety of denying a motion for a continuance, "we consider the reasons presented * * * at the time the request [for continuance] is denied." *In re Am. Transmission Sys.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 32, quoting *State v. Beuke*, 38 Ohio St.3d 29, 36, 526 N.E.2d 274 (1988).

{¶6} In this case, mother informed the court she could not attend the hearing because it was too great a burden to travel from Pennsylvania. But, due to the nature of her request, there was no way of telling from the email when—or even if—mother would be able to return to Hamilton County. Even during the hearing on the objections to the magistrate's decision—a time when mother was represented by counsel—there was no indication of when or if mother would be able to come to Hamilton County. Additionally, the magistrate had made arrangements for an interpreter to be present to assist mother at the hearing. Since the magistrate, mother's court-appointed interpreter, father, and his counsel were all present and prepared to go forward, and since mother's ability to participate at some indefinite point in the future was unknown, it was not an abuse of discretion to proceed with the merits hearing.

{¶7} While the decision of which parent has custody is a serious one, every litigant's case is important. The courts in this district make decisions where

individual liberty is in the balance, where millions of dollars are at stake, that protect the sanctity of the home, or are literally life-and-death. In this regard, the analysis for whether a continuance is proper in a murder case is no different than the analysis set forth here. *See, e.g., State v. Unger*, *supra*.

{¶8} In order for the courts to do this work with efficiency and diligence, they rely on this court to give them the latitude to do what needs to be done. When a party is unavailable, that work stops. Parties' lives are placed on hold and, as in this case, there is no end in sight. A litigant does not have the right to unreasonably delay a trial. *Hartt v. Munobe*, 67 Ohio St.3d 3, 9, 615 N.E.2d 617 (1993). This court has noted that:

> [t]o constitute a sufficient ground for a continuance because of the absence of a party it must appear that the absence is unavoidable, and not voluntary; that [the party's] presence at the trial is necessary; that the application is made in good faith; *and that [the party] probably will be able to attend court at some reasonable future time.*

(Emphasis added.) *Moore v. Turney*, 1st Dist. Hamilton No. C-120735, 2013-Ohio-4564, ¶ 5, quoting *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942), paragraph two of the syllabus. The crucial missing factor is that mother has not indicated when, or if, she will be able to attend a future hearing. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 48 (militating against the request for a continuance was the fact that no time period was specified as to the proposed length of the continuance). Trial courts will simply no longer function if parties can seek open-ended continuances without being required to give some assurance that they will be able to participate at a future, certain date.

{¶9}    We also reject mother's argument that the trial court should have, sua sponte, postponed the hearing to determine if father should be required to pay for her expenses to travel to Hamilton County pursuant to R.C. 3127.24(D).  Mother did not seek such relief in her email message to the court.  In light of the broad discretion afforded trial courts in such situations, *see Minton v. McManus*, 9 Ohio App.3d 165, 168, 458 N.E.2d 1292 (9th Dist.1983), we cannot find that the trial court erred when it failed to sua sponte raise this issue.  Mother's first assignment of error is overruled.

### Custody Determination was not an Abuse of Discretion

{¶10}    In her second assignment of error, mother argues that the trial court improperly determined that granting custody of the child to father was in E.A.'s best interest.  *See* R.C. 3109.04(B)(1).  The trial court's decision was not an abuse of discretion.  *See Davis v. Flickenger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶11}    R.C. 3109.04(F) lists a number of factors for the trial court to consider when determining the child's best interest for purposes of a custody determination.  In this context, it is important to note that this was an initial custody determination.  Thus, unlike a modification of a prior custody determination, the court operated under no initial presumption that one parent was in a better position to maintain custody.  *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 38.

{¶12}    Father presented testimony that he could provide a stable home, that E.A. would have other siblings with whom to play and bond, and that she would be well cared for.  This contrasted to mother, who had a history of moving, and who had moved to Pennsylvania without having a job waiting for her there.  While it is true that the ability to provide these benefits to the child is dependent upon the means to

do so, that is not the same as saying that the decision was based upon a comparison of the financial position of the parties.

{¶13} It is true that the record in this case is thin. Nonetheless, it is thin because mother failed to attend the hearing on the matter. On this record, we cannot say that the trial court abused its discretion. Mother's second assignment of error is overruled.

### The Record Does not Show the Trial Court Failed to Review the Complete Record Before Ruling on Objections

{¶14} In her third assignment of error, mother claims that the trial court erred when it overruled her objections to the magistrate's decision without considering the affidavit she had submitted in support of them. But there is nothing in the record to indicate that the trial court had not done so. In fact, a review of the transcript of the hearing on the objections indicates that the trial court had read the affidavit and had asked questions based on information contained therein. Further, the decision of the trial court states that it had conducted "an independent review of the objected matters, the evidence presented and the oral arguments submitted to the court." The fact that the trial court overruled her objections is not evidence that they were not properly considered. Mother's third assignment of error is overruled.

### Conclusion

{¶15} As the dissent notes, this is certainly a troubling case. But it was made so when mother failed to appear for a hearing at which the custody of her child was to be determined. In order to function, trial courts must be given a wide berth to regulate their dockets. Father did not win custody because mother failed to appear. The hearing was conducted. A determination was made, objected to, considered, and adopted.

{¶16}     Having considered and rejected mother's three assignment of error, we affirm the decision of the trial court.

Judgment affirmed.

FISCHER, J., concurs.
DEWINE, J., dissents.

DEWINE, J., dissenting.

{¶17}     This is a troubling case. The majority today upholds a trial court's decision removing a seven-year-old girl from her mother with whom she has lived her whole life. The holding affirms the decision below that this abrupt change is in the child's best interest, but it does so based upon an ex parte trial where no real evidence about the child's best interest was produced.

{¶18}     I believe a continuance should have been granted to allow mother to participate. I also believe that the record as it stands does not support the trial court's determination that granting custody to father was in the child's best interest. So, I dissent.

### An Ex Parte Trial to Determine a Child's Best Interest

{¶19}     In addition the facts set forth by the majority, a few additional ones are helpful to get a full flavor of the proceeding below.

{¶20}     Father filed his petition for custody on February 22, 2012. According to the petition, mother and E.A. lived in Wilkes-Barre, Pennsylvania at that time, and had resided there since December 2011.

{¶21}     The trial date was selected at a pretrial hearing held on June 14. Mother appeared pro se. During the hearing, it was evident that mother did not speak English well and was confused by the process. The court took note and stated that it would provide a French translator for future proceedings. The court selected a

trial date after receiving input from father's counsel but with no apparent input from mother. In fact, a review of the transcript indicates little participation in or understanding of the proceedings on the part of mother. At the end of the hearing, mother expressed surprise at the course of proceedings: "So we're not going to do anything today?" The court explained that the matter would be set for trial the next time, and mother was handed a paper to sign acknowledging the trial date.

{¶22} Mother apparently called the court two weeks prior to the scheduled trial date and asked for a postponement because she could not make it to Cincinnati on the scheduled date. Her attempt to reschedule was unsuccessful, and a few days before the scheduled trial date, mother followed with this email:

I would like to let you know that I will not be able to attend on the 4th September 2012. I have tried to postpone it but have been told by the clerk that the other party refused.

I spent $800 for travel and accommodation when I attended last June I have not pay it back yet.

I am not in a position to afford the travel and the accommodation cost and also last time when we attended my daughter was so exhausted because we traveled back the same date.

I want to ask if that will be possible to do video or call link with the Court or if we can transfer the case to my city.

Once again sorry for any inconvenient this may cause and hoping we will find a solution that helps us resolve this issue.

Regards,

[A.A.]

{¶23}    After the magistrate refused to continue the case, the matter proceeded to trial. Father presented his version of events. Because there was no opposing counsel, there was no cross-examination. Father was allowed not only to present his version of events without contradiction but also to testify to various hearsay matters regarding mother in complete disregard of the rules of evidence.

{¶24}    Despite the ex parte nature of the proceeding, the magistrate had remarkably few questions for father. He asked only if father had had any criminal charges, and if father had had any big fights with mother. When father replied in the negative to both lines of inquiry, the magistrate said, "All right. Based on the testimony today I'll grant custody to [father]."

{¶25}    A written decision from the magistrate followed. The magistrate credited father's testimony, including father's hearsay statements about mother. He noted that father had a steady job, owned his home and could take care of E.A. without daycare. Father, the magistrate found, has a "stable life," while mother "moves often" and went to Pennyslvania "when she had no job." Based upon the assumption that father's greater resources allowed for greater stability, the magistrate concluded that it was in the "best interests" of E.A. to be in the custody of her father.

{¶26}    After the magistrate's decision was issued, mother apparently realized the gravity of the situation and contacted an attorney who filed objections to the magistrate's decision. A hearing was held on the objections. Prior to the hearing, mother tried to submit evidence by affidavit that contradicted much of father's trial testimony. The affidavit explained that in 2006, when mother became pregnant with father's child, father expressed dismay and urged her to have an abortion. From E.A.'s birth until present, E.A. lived exclusively with mother, and mother cared for

E.A. on a daily basis. Father did provide some assistance in caring for E.A. during the first three years of her life. But in 2009, father informed mother that his wife was coming from Africa, that he did not want his wife to know about E.A., and that he could no longer assist in caring for E.A. At some point after his wife arrived, father changed his position and demanded that E.A. live with him and his wife. Mother refused, but was willing to let father continue to see E.A. As far as mother knows, however, since 2009, father has had only four visits with E.A., which took place at her daycare. Further, father provided only limited and sporadic financial support to E.A., and none since the move to Pennsylvania. Mother had steady employment in Cincinnati from 2006 until she was laid off in late 2011. As a result, she moved to Wilkes-Barre to seek employment. Mother further opined in her affidavit that E.A. is a well-adjusted first-grader, who enjoys school and who has many friends in Wilkes-Barre. Mother also averred that she did not understand that father might be awarded custody following the September hearing.

{¶27}  Opposing counsel objected to the consideration of the affidavit. Under Civ.R. 59(D), the court had the discretion whether or not to consider additional evidence. Here, there is no indication that the trial court chose to consider the affidavit. Rather, the trial court simply issued a seven-sentence opinion summarily affirming the decision of the magistrate, concluding that the "[m]agistrate properly determined the factual issues and appropriately applied the law."

### An Abuse of Discretion to Deny a Continuance

{¶28}  A trial court needs to be able to manage its docket. For this reason, it is understood that the decision to grant or deny a continuance rests within the sound discretion of the trial court. *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942). This discretion, though, is not unbridled. We balance the need

11

for effective docket management against a desire to allow litigants their day in court when at all possible and to have cases decided on their merits. Thus, we have said that "a party has a right 'to a reasonable opportunity to be present at trial and a right to a continuance for that purpose.' " *Moore v. Turney*, 1st Dist. Hamilton No. C-120735, 2013-Ohio-4564, ¶ 4, quoting *Brown v. Bowers*, 1st Dist. Hamilton No. C-070797, 2008-Ohio-4114, ¶ 15. But we have also qualified that "a party does not have a right to unreasonably delay a trial." *Id.*

{¶29} There is "no mechanical test[]" for whether the denial of a continuance constitutes an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Among the factors to be considered are

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶30} The Ohio Supreme Court has said to constitute sufficient grounds for a continuance due to the absence of party "it must appear that the absence is unavoidable and not voluntary; that the [party's] presence at trial is necessary; that the application is made in good faith; and that [the party] probably will be able to attend court at some reasonable future time." *McCabe*, at paragraph two of the syllabus.

12

{¶31} Ultimately, in deciding whether it was an abuse of discretion to refuse a continuance, we employ "a balancing test which takes cognizance of all the competing considerations." *Unger* at 67. The "competing considerations" in this case weigh heavily in favoring of allowing mother a continuance.

{¶32} The most important consideration here—one that is completely overlooked by both the majority and the court below—is that this is a case where the duty of the court system is to determine the best interest of the child. No doubt both parents will be affected by the decision in this case. But the person who will feel the most profound impact is the seven-year-old child. With such high stakes, we should be particularly hesitant to allow an ex parte trial to occur without the participation of mother and without any input as to E.A.'s best interest. At oral argument in front of this court, counsel for father was asked what the child wanted. He replied, honestly, that he didn't know. Neither do we. And neither did the court below. The need for a full adversarial process when the stakes are so high strongly weighs in favor of giving mother another chance to attend the hearing.

{¶33} The majority's decision today will impact not only E.A.'s future but also the fundamental rights of her mother. *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In such circumstances, we have been cautioned that although "[t]he establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance[,] * * * the Constitution recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 31 L.E.2d 551 (1972). The due-process protections of our Constitution, we are told, "were designed to protect the fragile values of a vulnerable citizenry from [an] overbearing concern for efficiency and efficacy[.]" *Id.*

{¶34} Indeed even in cases without such severe consequences and without constitutionally protected rights at stake, this court has not hesitated to find an abuse of discretion in denying a continuance in appropriate circumstances. *See, e.g.*, *Moore v. Turney*, 1st Dist. Hamilton No. C-120735, 2013-Ohio-4564 (reversing the denial of a continuance and remanding for trial in small claims court).

{¶35} Leaving aside the high stakes here, consideration of the prejudice to the respective parties also weighs in favor of a continuance. Father lives in Hamilton County, and presumably could have attended another date with little difficulty. A continuance would have caused some delay, which father didn't want. But in this case, father had had only intermittent contact with E.A. for over two years before he decided to seek custody. Certainly, the prejudice to father that would have been caused by a reasonable continuance was far outweighed by the prejudice to mother and E.A. as a result of the ex parte trial. *See Swanson v. Swanson*, 8th Dist. Cuyahoga No. 90472, 2008-Ohio-4865.

{¶36} The "good faith" factor cited in *McCabe* also weighs in favor of a continuance. *See McCabe*, 140 Ohio St. at 538, 45 N.E.2d 763. One only need read mother's email to understand that she wasn't trying to unnecessarily delay or duck the proceedings. In fact, she volunteered several options—transfer, video or call link—that she believed would have allowed the case to proceed without delay. While she may have been naïve in her assumption that the court could accommodate her suggestions, her request was certainly in good faith.

{¶37} It is also significant that this was mother's first request for a continuance of the trial date. This is not a case where one party has unreasonably delayed trial through multiple requests for a continuance. *See, e.g., Rielinger v. Rielinger*, 8th Dist. Cuyahoga No. 90614, 2009-Ohio-1236.

14

{¶38}    Further, this is not a situation where the request for a continuance was made on the morning or eve of trial.  *See, e.g., Wise v. Brenneman*, 3rd Dist. Allen No. 1-98-22, 1998 Ohio App. LEXIS 4289 (Sept. 10, 1998).  The majority cites to the fact that the court had made arrangements for an interpreter, and that the interpreter as well as father and his counsel were present and ready to proceed with trial.  But mother's request for a continuance was made some two weeks before the trial date.  There was plenty of time to reschedule the hearing and the attendance of the interpreter.

{¶39}    The majority hinges its decision on a conclusion "that there was no way of telling from the mother's email when—or even if—the mother would be able to return to Hamilton County."  But there was a simple enough solution to that problem, one that is employed in trial courts everyday:  someone could have asked her.  Someone could have inquired during her initial phone call to the court.  A court employee could have responded to her email and asked if she could be available for another date.  Better yet, a phone conference could have been set up by the court with all parties to consider the request.  But there is no indication that any of these things were done.   It was just assumed that since she couldn't make the scheduled date, she couldn't make any other.

{¶40}    Moreover, mother's email itself seems to contradict the majority's conclusion that she would not be available for another date.  She states that "she had tried to postpone" the hearing.  Postpone means to put off until another date in the future.  Implicit in mother's request for "postponement" is her acknowledgment that there will be a trial.  So without more, it seems a leap for the magistrate to have concluded—and the majority to now conclude—that she could not have been available in the future.

{¶41} I don't mean to suggest that mother is blameless here. She probably could have done more. One can guess that if she knew then what she knows now, she would have found a way to make it to the hearing. And if this were a complaint about money, or some other dispute where she was the only one impacted, it might make sense to deny the continuance. But here, there was a lot more at stake, most notably the interest of E.A. Considering all the circumstances, I believe the trial court abused its discretion in denying the continuance.

{¶42} That I find an abuse of discretion here is not to suggest that continuances should be lightly granted. In the interests of prudent docket management, trial courts ordinarily do well to hold a party's feet to the fire when it comes to maintaining trial dates. In my view, it should be a rare case where we find that a trial court has abused its discretion in denying a continuance. But this is one of them.

### A Lack of Evidence that the Custody Award Is in E.A.'s Best Interest

{¶43} I also believe the trial court abused its discretion in awarding legal custody to father because, even with an ex parte trial, father did not meet his burden to demonstrate that the award of legal custody was in the best interest of E.A.

{¶44} As the party moving for legal custody, father had the burden to demonstrate that such a disposition was in the "best interests" of E.A. *See In re M.P.,* 9th Dist. Summit No. 25222, 2010-Ohio-3701, ¶ 6. The need for father to meet this burden was not obviated by the decision of the magistrate to conduct an ex parte trial. *See Carter v. Meyer,* 8th Dist. Cuyahoga No. 93457, 2010-Ohio-1868, ¶ 9. Rather, father was still required to set forth evidence demonstrating that the award of full custody was in E.A.'s best interest.

{¶45}    R.C. 3109.04(F)(1) sets forth appropriate factors that a court shall consider in determining a child's best interest:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments * * *;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

17

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶46}   A review of these factors demonstrates an almost complete lack of evidence at trial that the custody award to father was in E.A's best interest.  There was no evidence at all introduced as to subparts (b), (c), (d), (e), (f), (g) and (i). There was evidence under subpart (a) concerning father's wish to have custody of E.A., but we can assume that mother had a similar desire.  There was also evidence under (h) that father told the court that he did not have a criminal record, but there was no indication mother had a criminal record either.   Finally, there was evidence that mother had moved out of state, but nothing in the record to suggest whether such a move was in the best interest of E.A.

{¶47}   To the extent the magistrate gave a justification for his decision, it was that father's financial capabilities allowed him to provide a more stable environment for E.A.   But R.C. 3109.04(F)(3) specifically provides that "when allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition."

{¶48}   What was missing from the "trial" in this matter was any evidence about E.A.   There was no evidence about her needs and desires in regards to parenting, her attachments to her mother or father, her education, her psychological and emotional well-being or anything else that would seem pertinent to a seven-year-old's best interest.  All one can really take from a review of the trial transcript is that father desires to raise E.A., and that he says that he has stable and adequate finances.

{¶49}   Based upon this record, I cannot find that father has met his burden to show that it is in the best interest of E.A. to be yanked away from her mother with whom she has lived her entire life.  My colleagues see it differently, so I dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

