[Cite as *In re T.M.*, 2019-Ohio-4552.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| IN RE: T.M. | : | APPEAL NO. C-180622 |
| | | TRIAL NOS. 17-6270Z |
| | : | 18-1302Z |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgments Appealed From are: Reversed and Causes Remanded

Date of Judgment Entry on Appeal: November 6, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1}     In five assignments of error, appellant T.M. claims that the trial court erred when it ruled that he was a delinquent child for committing a felonious assault, when it committed him to the Department of Youth Services ("DYS") for that offense, and when it committed him to DYS for a second, unrelated offense for which he had previously been adjudicated delinquent.  For the reasons set forth, we reverse the decisions of the trial court and remand the causes for further proceedings.

### Delinquency Trial Continues without Defense Witnesses

{¶2}     The victim in this case testified that he received a call from his daughter in which she told him that a group of children were harassing her.  The victim then walked down to the house where his daughter lived.  He testified that the other children were yelling and throwing rocks at the house. T.M., who was present, yelled at the victim, demanding that he leave the kids alone.  The victim said that, at that point, the two "got into it."  He said T.M. started swinging at him, and he started to protect himself.  "I try to walk away from the situation, and the next thing I know, I am waking up in the back of an ambulance."

{¶3}     The victim's daughter's mother testified that

[the victim] started walking toward my yard and I think - - I'm not positive, but I think [T.M.] may have grabbed his shirt, but I know [T.M.] came up from behind him, and as [the victim] went to turn, [T.M.] grabbed him around the arms and then he went to fall backwards, [the victim] went with him over his shoulder and landed on his head.

The victim was turning to face T.M. when T.M. gave him the "bear hug."  She said that "I guess [T.M.] fell backwards, and when he fell backwards [the victim] went

2

with him and went over his shoulder and landed on his head." Later, she again said "[T.M.] fell backwards, and he still had ahold of [the victim]. When [T.M.] went down backwards, [the victim] went down and then his head went over his shoulder." She said that it looked like T.M. was about to kick the victim, but she had started running toward them and T.M. fled.

{¶4} T.M. testified that he and the victim were yelling at each other. He said that the victim then punched him in the head, and T.M. punched the victim in the chest. He said that the victim grabbed him by the shirt and tried to pick him up, at which point the two men fell over. T.M. said that after he fell he ran to his sister's house.

{¶5} The case had been set for trial three times after the preliminary hearing. At the first trial setting, on July 30, 2018, the state requested a continuance because it did not know where the victim was. Defense counsel opposed the request, noting, "I do have two of my witnesses here." The trial court granted the state's request and reset the hearing for August 20. On that date, the state again requested a continuance because the victim had been hospitalized. The state had been contacted on August 16 and had filed the motion for a continuance on August 17. Again, defense counsel stated that the defense was "prepared to go forward." The trial court granted that motion and the case was reset for September 18.

{¶6} On that date, the hearing began with defense counsel informing the trial court that "[a]t this point we weren't sure that the PW was going to appear. I did have some witnesses subpoenaed. They are at school, so after - - when the defense begins, if I can't get them here, I would like to ask for a continuance in progress." The trial court said that "we'll deal with that then. I would go ahead and contact your witnesses and tell them to make their way to juvenile court, okay?"

{¶7} At the conclusion of the state's case, defense counsel stated:

MS. RICE:  I have been trying to get in contact with the investigator to pick up my two witnesses from Holmes High School, and he let me know he was up in Blue Ash, and at 10:53 this morning, he told me it's going to be at least 45 minutes to an hour before he could get the witnesses here, so at this point—

THE COURT: I don't understand why you didn't have your witnesses ready for trial.

MS. RICE:  I did. I subpoenaed them.

THE COURT: I know, but why weren't they here?

MS. RICE: Because apparently at the last hearing - -

THE COURT:  That was a gamble you took, isn't it?

MS. RICE: I'm sorry?

THE COURT: At the last hearing - - what were you going to say?

MS. RICE:  I did subpoena them.

THE COURT: Okay

MS. RICE:  And all of the other, the police officers that I subpoenaed were here.  At the last hearing we were here, the State requested a continuance.  There was some confusion, I guess.  As to dad, [T.M.'s father], thought that we were going to hold off on our witnesses to see if the PW was going to show up.  I expected them to be here.  I certainly didn't expect them to be at school.

THE COURT:  So you issued a subpoena for them to appear?

MS. RICE: I did, your honor.

THE COURT: And they are not here?

MS. RICE: Correct.

THE COURT: All right.  From the state?

4

MR. MERSCHBACH: Yes. The State is opposed to the continuance. We are here ready for trial. In regards to the continuance of the last hearing, it was because our victim was at the V.A. We knew about that in advance and filed a motion in advance, which obviously we did not do in this case. We were prepared for our portion of the trial.

MS. RICE: Just for the record, the State has had multiple continuances in this matter, and I think the defense has never requested one. I think there is good cause for either the Court to allow a brief recess in order for my witnesses to get here or a brief continuance in progress.

THE COURT: Okay. Your request for continuance is denied. Your witnesses were subpoenaed to be here at the time of trial. Everyone knew today was the trial date. You were prepared for trial. It's just unfortunate you don't have them present.

{¶8}     At the conclusion of the trial, the trial court found T.M. delinquent for having committed felonious assault. On the issue of knowingly causing serious physical harm, the trial court stated "it was clear that defendant grabbed him in a bear hug and they fell to the ground." The trial court rejected T.M.'s self-defense argument. Defense counsel proffered that

[J.A. and T.D.] were witnesses to this incident. They were - - they talked to the police officers. It's on the body camera. We did subpoena both of them. They are not here; however, we did try to get them here and were unable to. Testimony would have been, we were walking to Family Dollar. Dude came out and said stop messing with my kids, started yelling, white dude hit someone and got hit back.

At a subsequent disposition hearing, the trial court ordered T.M. to be committed to DYS for a minimum of one year up to the age of 21. Additionally, the juvenile court imposed a six-month commitment that had been suspended in a prior, unrelated case in which T.M. had been found delinquent for committing the offense of aggravated assault.

### Request For Recess/Continuance

{¶9} In his first assignment of error, T.M. claims that the trial court abused its discretion when it denied his motion for a recess or continuance to get the witnesses to court. We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *See State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). When evaluating a motion for a continuance, a court should consider:

(1) the length of the delay requested,

(2) whether other continuances have been requested and received,

(3) the inconvenience to parties, witnesses, opposing counsel and the court,

(4) the reason for the delay,

(5) whether the party contributed to the circumstances that gave rise to the request for a continuance,

(6) and any other relevant factors.

*In re E.A.*, 1st Dist. Hamilton No. C-130041, 2014-Ohio-280, ¶ 5, citing *Unger* at 67-68. When considering the propriety of denying a motion for a continuance, this court considers the reasons presented at the time the request was denied. *See In re Am. Transm. Sys.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 32.

{¶10} In this case, none of the *Unger* factors supported the denial of the motion.

6

{¶11}   *Length of the delay requested*:  As to the first prong, counsel's request was for an hour delay.  While it is not stated in the record, it is clear from the context that it was late morning when the request was made.  At the very least, it was a time when the witnesses were still at school.

{¶12}   *Other continuances*:   As to the second prong, counsel had not requested or received prior continuances, while the state had received two prior continuances.

{¶13}   *Inconvenience to parties*:  Further, the inconvenience to the parties would have been minimal.  The delay was requested sometime shortly before the lunch hour.  The court could have recessed for that purpose, and this would have given witnesses the time requested.  Since all the state's witnesses had testified, the only parties impacted in any way would have been the attorneys, the judge, and the officer who was the state's representative (who did not actually testify in the trial).  While the trial court indicated it had other matters on its docket, those matters could have been addressed during the recess.  Based on the context, the testimony of the two witnesses would not have taken long and the matter would still likely have been resolved that day.

{¶14}   *Reason for the delay*:  Additionally, the reason for the delay was that the witnesses were in school.  From the transcript, it appears that the witnesses were under the impression that the case might not go forward on that date, so they went to school.  They had missed school for the two prior hearings, which had been continued at the state's request.  While the state notes that T.M. had been warned to have the witnesses there at the close of the state's case, the record reflects that counsel had attempted to get them there, but the defense investigator was in another part of the county and would therefore be delayed getting the witnesses out of school and to court.

{¶15} *Fault of party*: Furthermore, it does not appear that T.M. contributed to the delay. They had been subpoenaed to be there at the beginning of trial. Counsel stated that "I expected them to be here. I certainly didn't expect them to be at school." While counsel suggested that T.M.'s father might have said something, there is no evidence that he did so at counsel's request or that counsel knew they had been told this until the witnesses failed to appear.

{¶16} *Other factors*: Finally, the record demonstrates that the request for a recess or continuance was not for the purpose of delay, to frustrate the proceedings, or to in any way attempt to gain an advantage. The testimony was important because none of the state's witnesses provided clear testimony about what had occurred, and so the adjudication would be based on the credibility of these varied accounts.

{¶17} Few cases find that a trial court abuses its discretion when it denies a motion for a continuance. But this court has previously found such an abuse of discretion. *See In re R.W.*, 1st Dist. Hamilton Nos. C-130151 and C-130152, 2014-Ohio-175, *rev'd on other grounds*, 140 Ohio St.3d 1433, 2014-Ohio-4160, 16 N.E.3d 678. In that case, this court said:

> Contrary to the belief of the trial court, the state had not sought a prior continuance because of the witness's unavailability. While the witness was not present at the initial hearing, the case was continued at that time solely for the purpose of determining the proper judge to hear the case. The state had indicated that, while the witness was not present, she could be called if needed and could be in court in 20 minutes.
>
> According to the record, the witness was not available on February 20 because she had not been consulted about her availability when the date for the hearing had been set, and was scheduled to be

8

out-of-town on that day. The state shortly discovered the scheduling problem and asked for a continuance two weeks prior to the hearing date. Therefore, the state did everything possible to mitigate the situation and cannot be said to have contributed to the circumstances giving rise to the request such that a dismissal was proper. Further, there was no discussion of how the delay would inconvenience the parties, witnesses, or the court.

Under the facts of this case, we conclude that the trial court abused its discretion when it denied the state's request for a continuance and dismissed the case.

*Id.* at ¶ 11-13.

{¶18}    Likewise, defense counsel in this case did "everything possible to mitigate the situation and cannot be said to have contributed to the circumstances giving rise to the request." Since none of the factors weighed in favor of denying the request, the trial court abused its discretion when it denied the motion for a continuance. Under the specific facts of this case, we sustain T.M.'s first assignment of error.

### Weight and Sufficiency of Evidence and Disposition

{¶19}    Based on our determination of the first assignment of error, the second and third assignments of error related to sufficiency and weight of the evidence supporting the felonious assault adjudication are moot. We therefore decline to address them. *See* App.R. 12(A)(1)(c). The fourth assignment of error, relating to the trial court's decision to send T.M. to DYS for that adjudication, was withdrawn by counsel.

## Disposition of Unrelated Charge

{¶20}    In his fifth assignment of error, T.M. claims that the trial court erred when it ordered him to spend six months in DYS for conduct charged in an unrelated case without first giving him notice.  At the same hearing in which it imposed the disposition for the felonious-assault charge, the trial court imposed the six-month term that had been previously suspended in the case numbered 17-6270Z.  The state concedes that this was error because T.M. had not been notified of the probation violation pursuant to Juv.R. 35(B) prior to the trial court's determination.  We sustain T.M.'s fifth assignment of error.

## Conclusion

{¶21}    For the reasons set forth above, the trial court abused its discretion when it denied T.M.'s request for a one hour recess/continuance to allow two witnesses to be brought from school.  The trial court also erred when it issued a disposition in case 17-6270Z without giving notice pursuant to Juv.R. 35(B).  We sustain T.M.'s first and fifth assignments of error, reverse the trial court's judgments, and remand the causes for further proceedings.

Judgments reversed and causes remanded.

**ZAYAS** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.