[Cite as *State v. Brice*, 2017-Ohio-974.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160473 |
| | | TRIAL NO. B-1503564 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ANTHONY BRICE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 17, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havelin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro* for Defendant-Appellant.

**CUNNINGHAM, Judge.**

{¶1}   Following a bench trial, defendant-appellant Anthony Brice was found guilty as charged of two counts of nonsupport of dependents, in violation of R.C. 2919.21(A)(2) and 2929.21(B).  The trial court merged the R.C. 2919.21(A)(2) charge with the R.C. 2919.21(B) charge, and sentenced Brice to five years of community control on the (B) charge.  This appeal followed.

## Facts

{¶2}   Brice was indicted in July 2015 and was appointed counsel.  Between August 2015 and January 28, 2016, the trial court granted Brice three pretrial continuances for various reasons, including a scheduling conflict, a request for more time for counsel to review discovery, and a representation that the state and Brice were in the midst of plea negotiations.  Apparently, plea negotiations were unproductive because, on October 26, 2015, Brice appeared in court, waived his right to a jury trial, and requested a bench trial.  The court scheduled a bench trial for January 28, 2016.  On that date, the state had its witnesses present and was ready to proceed to trial.  Brice appeared with appointed counsel, but told the court that he had "partially given a deposit" to a law firm, and that he had retained private counsel. Brice also told the court that he had not spoken with his private attorney since October 2014. The trial court was reluctant to grant Brice a continuance, but did so stating, "Now, let me tell you, I don't believe this story about hiring a lawyer in 2014.  If you are going to hire a lawyer, get busy and hire a lawyer.  I want to see the lawyer on the next court date.   * * *   Whether it is retained counsel or * * * [appointed counsel], we are going forward at the next setting."

{¶3}   At the next setting, Brice appeared with his appointed counsel and requested another continuance. Brice again claimed that he had hired an attorney. Brice told the court that his private attorney had had a trial in Clermont County and "was going to fax you over something."  The court responded,

Well, today is March 1, 2106. The case was scheduled to be called for trial at 9 a.m. It is now seven minutes after 12:00. On 1/28/2016, the case was scheduled for trial. On that date you requested a continuance so that you could retain private counsel. I gave you that continuance. So the matter has been set from 1/28/2016 until today's date. We are going forward today.

{¶4} The case proceeded to trial. The state's first witness was Ed Schneider, an employee of the Hamilton County Department of Job and Family Services. Schneider testified that the Hamilton County Juvenile Court had ordered Brice to pay $245.67 a month in child support for his daughter, effective June 1, 2012. According to Schneider, between July 1, 2013, and July 1, 2105—the time period delineated in Brice's indictment—Brice had missed 95 weeks of payments. Schneider testified that during the indictment period Brice had made three payments totaling $592.82. The court admitted into evidence the juvenile court order establishing child support and a printout from the Statewide Enforcement Tracking System ("SETS") showing the few payments that Brice had made during the indictment period.

{¶5} The state's next witness was Niambi Odoms, the mother of Brice's child. Odoms testified that between July 1, 2013, and July 1, 2015, she had received only a few child-support payments from Brice. The assistant prosecutor asked Odoms if she felt that Brice had "adequately supported his child." She responded, "No." Defense counsel did not have any questions for Odoms, but the trial court did. In response to several questions from the court, Odoms stated that Brice fed and paid for items when their daughter was with him every other weekend, but that anything he purchased for their daughter stayed at his home.

{¶6} Brice testified in his own defense. He claimed that he saw his daughter more than the court-ordered visitation of every other weekend. According to Brice, he often had his daughter for extended periods of time during school vacations.

Brice also testified that he had paid for school supplies and field trips, and that he had purchased clothing for his daughter "all the time." Brice claimed that his daughter had taken clothing and toys that he had purchased to Odoms's house. Brice offered into evidence a collection of receipts from 2013 and 2014 totaling $4720.72 that he asserted were receipts for items that he had purchased for his daughter.

{¶7} On cross-examination, Brice admitted that he had been employed during the indictment period and that he had earned $400 to $600 a week. In regard to Brice's receipts, the state pointed out that many of the purchased items did not appear to be child-related expenses, including purchases of motor oil, dog food, toilet paper, and a toilet seat.

{¶8} After the defense rested, the court found Brice guilty as charged and ordered a presentence investigation report ("PSI"). According to the PSI, Brice had a total child-support arrearage of $13,104.32. At the sentencing hearing, the trial court merged the R.C. 2929.21(A)(2) charge into the R.C. 2929.21(B) charge, and sentenced Brice on the (B) charge to five years of community control. As one of the conditions of community control, the trial court ordered Brice to pay $13,104.32 in child-support arrearage. The arrearage amount included all missed payments, and not just those missed during the indictment period. Before sentencing him, the court asked Brice how much he made and how frequently he was paid. Brice said that he made between $400 and $850 a week and was paid weekly. Brice is a high school graduate and a certified electrician.

### The Court did not err in Denying Brice a Fifth Continuance

{¶9} In his first assignment of error, Brice contends that the trial court erred when it denied his March 1, 2016, request for a continuance. According to Brice, the court's denial prejudiced his rights to a fair trial and the effective assistance of counsel. This argument has no merit.

4

{¶10} We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *See State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). When evaluating a motion for a continuance, a court should consider the length of the delay requested, whether other continuances have been requested and received, the inconvenience to parties, witnesses, opposing counsel and the court, the reason for the delay, whether the party contributed to the circumstances that gave rise to the request for a continuance, and any other relevant factors. *In re E.A.*, 1st Dist. Hamilton No. C-130041, 2014-Ohio-280, ¶ 5, citing *Unger* at 67-68. When considering the propriety of denying a motion for a continuance, this court considers the reasons presented at the time the request was denied. *See In re Am. Transm. Sys.,* 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 32.

{¶11} Here, Brice had already been granted four continuances when he asked for yet another continuance on March 1, 2106. When the trial court had granted Brice his fourth continuance on January 28, 2016, the state had been ready for trial and had had its witnesses present. On March 1, 2016, Brice claimed for the second time that he had hired private counsel, and asked for yet another continuance. The trial court noted that Brice's trial should have started three hours earlier that day, and that—even with this delay—private counsel had not made an appearance or contacted the court. Further, Brice had been told in no uncertain terms that the trial would go forward on March 1, 2016, and that if Brice wished to retain counsel he needed to do so by that date.

{¶12} Under these circumstances, we find no abuse of discretion in the trial court's decision denying Brice's request for a continuance. Since the trial court did

not err, we need not determine whether its failure to grant a continuance was prejudicial. Brice's first assignment of error is overruled.

## Brice's Counsel was not Ineffective

{¶13} In his second assignment of error, Brice argues that he was denied the effective assistance of counsel. He was not.

{¶14} To sustain a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Trial counsel is entitled to a presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987); *State v. Bell,* 2015-Ohio-1711, 34 N.E.3d 405, ¶ 53 (1st Dist.). Further, to establish prejudice resulting from a deficient performance, an appellant must show that there is a reasonable probability that "but for" counsel's mistake, the result of the trial would have been different. *Strickland* at 694; *Bradley* at 142.

{¶15} Here, Brice contends that his attorney was deficient in that he "seemed wholly unprepared for trial as he did not have all of the appropriate receipts as exhibits," failed to question Odoms about the relationship between Brice and his daughter, and failed to object to the assistant prosecutor's question to Odoms concerning whether Odoms felt that Brice had provided "adequate support" for their daughter.

{¶16} As to the first allegation, there is nothing in the record demonstrating that counsel failed to produce all of Brice's receipts. The defense offered into evidence multiple receipts from 2013 and 2014 purporting to show that Brice had spent over $4000 on his daughter during that time period. In regard to Brice's second allegation, Brice's attorney's decision not to ask Odoms about Brice's

relationship with his daughter can be fairly characterized as trial strategy, as it was reasonable to assume that Odoms would not testify favorably about Brice. And we note that when the court questioned Odoms about Brice, her testimony was largely detrimental to him. Finally, while counsel perhaps should have objected to the assistant prosecutor's question that essentially required Odoms to make a legal conclusion concerning "adequate support," Brice has not shown that there is a reasonable probability that "but for" the failure to object, the outcome of his trial would have been otherwise.

{¶17} We therefore overrule the second assignment of error.

## Weight and Sufficiency of the Evidence

{¶18} In his third assignment of error, Brice argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶19} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In regard to the weight of the evidence, we review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶20} Under R.C. 2919.21(B), the state had to prove that Brice had recklessly failed to provide support to his daughter, as established by a court order, for 26 out of 104 consecutive weeks. Schneider testified that during the 104-week period of July 1, 2013, through July 1, 2105, Brice had missed 95 weeks of court-ordered child-support payments. The state offered into evidence the juvenile court order

establishing child support, as well as a SETS printout that corroborated Schneider's testimony. And Odoms testified that she had only received a few child-support payments from Brice. In his defense, Brice essentially contended that he had provided other and adequate support to his daughter during the indictment period.

{¶21} Viewing this evidence in a light most favorable to the state, we hold that the state proved all the elements of R.C. 2919.21(B) beyond a reasonable doubt. And while Brice attempted to exonerate himself, there is no indication that the trial court "lost its way" in choosing to believe the state's version of events over Brice's. The trial court's judgment was therefore not against the weight or the sufficiency of the evidence. Brice's third assignment of error is overruled.

## Community Control

{¶22} In his fourth assignment of error, Brice contends that the trial court erred when it ordered him to pay his entire child-support arrearage of $13,104.32 as a condition of his community control. Because Brice did not object on this basis in the trial court, he has forfeited all but plain error on appeal. *See* Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23; *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31.

{¶23} Brice's argument is two-fold. First, Brice contends that the trial court abused its discretion when it ordered him to pay more than the child-support arrearage that had accumulated during the indictment period. Second, Brice contends that the trial court erred when it failed to inquire as to his ability to pay the full amount of the child-support arrearage. Neither argument has merit.

{¶24} We review the trial court's imposition of a community-control condition for an abuse of discretion. *See State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. In doing so, this court must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to

conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones,* 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990); *see State v. Cauthen*, 1st Dist. Hamilton No. C-130475, 2015-Ohio-272, ¶ 11. The statutory ends of probation, which is the functional equivalent of community control, are doing justice, rehabilitating the offender, and insuring good behavior. *Talty* at ¶ 11 and ¶ 16; *Cauthen* at ¶ 11.

{¶25} Here, Brice asserts that any arrearage that accumulated prior to or after the indictment period fails to meet the second *Jones* requirement in that it was not related to his violation of R.C. 2919.21(B). We find this argument unpersuasive.

{¶26} Brice's conviction was based on his failure to pay court-ordered child support for 95 weeks between July 1, 2103, and July 1, 2015. Ordering Brice to pay Odoms the full amount of his court-ordered child support is directly related to this crime. Simply put, it was the same behavior—i.e., failing to pay court-ordered support—that formed the basis for Brice's conviction and for the condition of community control. We therefore hold that the condition at issue had "some relationship" to Brice's crime.

{¶27} We also hold that the remaining *Jones* factors were met in this case. Requiring Brice to comply with the court order that formed the basis for his conviction was "reasonably related" to Brice's rehabilitation because it required him to support his daughter. Finally, the condition related to Brice's criminal conduct of nonpayment of child support, and served to ensure the "good behavior" of supporting his child. Other courts have found similarly. *See State v. Fuller*, 2015-Ohio-523, 27 N.E.3d 574 (8th Dist.) (holding that the total amount of child-support arrearage, even that which exceeds the time period of the offense, may be ordered as a condition of community control); *State v. Morrow*, 9th Dist. Lorain Nos. 14CA010552 and 14CA010553, 2015-Ohio-2627 (holding that a community-control condition that ordered defendant to pay past court-ordered child support was

reasonably related to rehabilitating the offender from the charged offense of nonpayment of child support, was closely related to that offense, and related to the criminal conduct underlying the offense); *State v. Teegarden*, 2d Dist. Montgomery No. 24960, 2012-Ohio-3488 (holding that a community-control financial condition is not limited to the "economic loss" requirement of restitution); *State v. Stewart*, 10th Dist. Franklin No. 04AP-761, 2005-Ohio-987 (holding that the trial court did not abuse its discretion in requiring a defendant convicted of nonsupport to pay the total accumulated support arrearages as a condition of his community control as the condition met the three *Jones* factors). We therefore hold that the trial court did not abuse its discretion in imposing this condition of community control.

{¶28} Brice next argues that the trial court erred by failing to inquire as to his present and future ability to pay his total child-support arrearage before ordering him to pay it. Brice is correct that, in general, a trial court is required to consider an offender's present and future ability to pay a financial-sanction condition before imposing it. *See* R.C. 2929.19(b)(5); *Cauthen*, 1st Dist. Hamilton No. C-130475, 2015-Ohio-272, at ¶ 6. This case presents an exception to that rule.

{¶29} At the outset we note that the trial court did, indeed, inquire as to Brice's ability to pay. However, it was under no obligation to do so, because the imposed condition required Brice to satisfy an existing court order. Prior to issuing the underlying child-support order, the Hamilton County Juvenile Court had already determined that Brice had the "ability to pay" the amount of child support that it had ordered. *See generally* R.C. Chapter 3119 ("Calculation of Child Support Obligation"). Because Brice's ability to pay had already been established by another court, the trial court did not have to revisit that issue. *See Fuller* at ¶ 22 (holding that the Child Support Enforcement Agency had already determined the amount of child support that defendant had to pay, and therefore the sentencing court did not have to make this inquiry when ordering defendant to pay the child-support arrearage as a

community-control condition); *Morrow* at ¶ 18 (holding that the sentencing court did not have to inquire as to defendants' ability to pay when it ordered payment of all child-support arrearages as conditions of community control because the sentencing court could order defendants to comply with the underlying court orders).

{¶30} Because Brice cannot demonstrate error, let alone "plain error," his fourth assignment of error is overruled. We affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

This court has recorded its own entry this date.