[Cite as *State v. Steelman*, 2018-Ohio-1732.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170337 |
|  |  | TRIAL NO. B-1605260-A |
| Plaintiff-Appellee, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
|  |  |  |
| JOSH STEELMAN, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 4, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher*, *William R. Gallagher* and *Elizabeth Conkin* for Defendant-Appellant.

**MILLER, Judge.**

{¶1}   A jury found Josh Steelman guilty of burglary and receiving stolen property for breaking into Flora and Davey Hayes's basement, and stealing cash, jewelry, and other items from a safe.  The trial court sentenced Steelman to eight years in prison.  We affirm.

*Facts*

**Police find Steelman with Stolen Items**

{¶2}   Within hours of the burglary, Deputy Gator Rollins found Steelman unconscious on the side of the road behind a pickup truck driven by Justin Callaway. Steelman had been riding with Callaway when he overdosed, and Callaway had pulled Steelman out of his truck.  According to Deputy Rollins, Callaway was "a nervous wreck," and "excited," and said that Steelman had overdosed on heroin. Emergency medical personnel arrived and revived Steelman. Deputy Rollins testified that subsequently, "in Callaway's excited state of mind," Callaway had said, "There's a lot of stuff in * * * [Callaway's pickup truck] that Steelman stole from Ohio."

{¶3}   Deputy Rollins searched Callaway's truck. He found jewelry, coins, and a bag containing almost $10,000 with Davey Hayes's name and phone number written in it.  At trial, Flora Hayes testified that most of these items had been in her basement safe.

**The Investigation: Jailhouse Calls, DNA Evidence, and the Wittich Interview**

{¶4}   Steelman made several jailhouse phone calls that were played for the jury.  One of the calls was to the Hayeses' son, who Steelman had known for years. Steelman said to him, "Tell your dad I'm so fucking sorry."  Steelman also said that documents taken from the Hayeses' safe were in a burn barrel close to the Hayeses' house.  Investigating detective Albert Wittich found the documents where Steelman

2

said they would be. In another call, Steelman detailed the dollar bill denominations of the stolen money. In others, he stated that Callaway wasn't involved, that if the Hayeses pressed charges against him, he would "be fucked," and that the people Steelman believed were involved in the burglary would "fucking pay." Steelman named several of the people he thought had been involved in his alleged set-up.

{¶5} Items police collected from the Hayeses' basement included a Pepsi can. It was noticeably out of place, as neither of the Hayeses drank Pepsi. Later testing found Steelman's DNA on the can.

{¶6} Wittich interviewed Steelman after some of the jailhouse calls, but before Steelman was arrested for burglary and receiving stolen property. The interview began with Steelman stating that he wanted a lawyer, and that he did not talk to police officers. The detective answered that the interview was an opportunity for Steelman "to explain himself," and say who else had been involved. Steelman repeatedly said he did not want to talk, and that he wished to have counsel. Interspersed with these statements, however, Steelman stated that he had been high the night the burglary took place, remembered only bits of the evening, and believed he had been framed. He also told Wittich that Callaway had not been involved, and that around $10,000 had been stolen from the Hayeses. Steelman refused to answer Wittich's question of who, in particular, had been involved in Steelman's alleged set-up and the burglary.

### The State Plays the Interview in its Case-in-Chief

{¶7} Steelman waived his right to move to suppress the Wittich interview but nevertheless objected on the basis of *Miranda* to the state playing it in its case-in-chief. The objection was overruled.

{¶8} After the interview was played, defense counsel asked Wittich on cross-examination, "When you were talking to Mr. Steelman, you were trying to get him to * * * implicate * * * third parties?" Wittich answered, "If that was the truth, yes." On redirect, the state asked the detective, "You specifically asked the defendant, hey, tell me who else was involved, and he didn't tell you anybody, right?" Wittich answered, "Correct."

### Steelman Takes the Stand

{¶9} Steelman testified that he had been under the influence of multiple drugs the night the Hayeses, who were his neighbors and family friends, were burglarized. He said he was at a casino until 3 a.m., and then "continued to party" at home until he saw police arrive at the Hayeses' home.

{¶10} Steelman said he walked next door to investigate and learned that the Hayeses had been burglarized. Steelman explained that Callaway had told him how much money had been stolen, and its denominations. Steelman also testified that he knew where the stolen documents were because he had inspected the perimeter of the Hayeses' property the morning of the burglary and had seen them before leaving with Callaway. He explained that he didn't immediately come forward with this information because he had a criminal record, and was afraid doing so would falsely implicate himself in the burglary.

### Closing Argument

{¶11} During closing argument, the prosecutor referenced Steelman's refusal to answer Wittich's questions concerning third parties. The state also argued that Steelman never would have known that $10,000 had been taken from the Hayeses unless he was guilty, and would have told Wittich that someone else had given him the money had someone else been involved. The assistant prosecuting attorney made

4

several comments calling Steelman such names as a "yay-hoo" and a "junkie," and calling into doubt Steelman's truthfulness and the overall strength of his defense.

{¶12} The defense's theory of the case was that Steelman had been plied with drugs by the real burglars, taken to the casino while the burglary occurred, and then framed. Defense counsel argued that other people, and not Steelman, knew that the Hayeses had a safe full of valuables in their basement and could have been the culprits. Counsel suggested that the Pepsi can with Steelman's DNA on it had been taken from the garbage close to Steelman's house and planted in the Hayeses' basement.

## Jury Question

{¶13} During deliberations, the jury sent a note to the judge, stating, "The jury is split on Count 1 [burglary]. * * * [H]ow much longer should we deliberate? We are still evenly split after reviewing all evidence and after multiple votes." The court administered the *Howard* charge. The jury subsequently returned a guilty verdict on both counts.

## Assignments of Error

## Prearrest Silence

{¶14} In his first assignment of error, Steelman contends that the state used his prearrest silence in the Wittich interview as substantive evidence of his guilt, in violation of the Fifth Amendment's protection against self-incrimination. Steelman is correct.

{¶15} We apply a plain error standard of review. Steelman argues that a plain error analysis is not appropriate because counsel objected to the interview. However, counsel objected on the basis of *Miranda* and not on self-incrimination grounds. The *Miranda* objection did not alert the trial court or opposing counsel to

5

Steelman's Fifth Amendment argument at a time when the potential error could have been avoided or corrected, which is the very purpose of an objection. *See State v. Davis*, 1 Ohio St.2d 28, 203 N.E.2d 357 (1964), paragraph two of the syllabus; *State v. Childs,* 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. He has therefore forfeited all but plain error on appeal. Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22. "Plain error" is (1) an error, (2) that is obvious, and (3) that affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶16}   Here there was error that was obvious.  The Fifth Amendment to the United States Constitution states that no person "shall be compelled in any criminal case to be a witness against himself."  Unless used for impeachment, evidence that a defendant asked for an attorney or otherwise indicated an unwillingness to talk to police violates the Fifth Amendment's protection against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 31.  Here, the state presented evidence in its case-in-chief that Steelman asked for an attorney multiple times, refused to answer Wittich's question concerning who else was involved, and told Wittich he "didn't talk to cops."  There was no probative value to the evidence of Steelman's silence other than to allow the jury to infer guilt from it. *See id.* at ¶ 25. It therefore was admitted in violation of the Fifth Amendment. *See id.*; *Combs v. Coyle*, 205 F.3d 269 (6th Cir.2000) (use of defendant's statement to police, "talk to my lawyer," in the state's case-in-chief violated the Fifth Amendment's shield against self-incrimination); *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388 (detective's testimony that defendant's attorney, and not defendant, returned a phone call placed to the defendant, and testimony that the defendant never gave police a statement violated the Fifth Amendment's protection against self-

incrimination); *State v. Whitaker*, 4th Dist. Scioto No. 07CA3168, 2008-Ohio-4149 (officer's testimony that defendant told the officer that he "didn't want to incriminate himself" impermissibly used the defendant's right to remain silent against him); *State v. Estepp*, 2d Dist. Miami No. 2006 CA 22, 2007-Ohio-2596 (detective's testimony that defendant failed to return phone calls and cancelled police interviews violated defendant's right not to incriminate himself).

{¶17} The state contends that because Steelman took the stand his silence was properly admitted to impeach him. Once a defendant chooses to testify, the state may use a defendant's prior silence to impeach his credibility. *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86, (1980). A defendant's silence, however, "cannot possibly be used to impeach his credibility when he has yet to testify." *State v. Shea*, 1st Dist. Hamilton No. C-840806, 1985 WL 8938, *3 (July 17, 1985). Here, Steelman had not yet testified when the state played the interview. This error was not cured when Steelman took the stand. It is impossible to say if Steelman's choice to testify was based on pressure to explain his silence, and we therefore find that the state's after-the-fact justification is feckless. *See Combs* at 285. Further, the state used Steelman's silence as evidence of his guilt, not as impeachment evidence, by asking Wittich, "You specifically asked the defendant, hey, tell me who else was involved, and he didn't tell you anybody, right?" And did so again during closing argument when the prosecutor stated, "If someone else had stolen that sack of money he [Steelman] would have told Det. Wittich 'I don't know how much was in there, Larry gave it to me.' " The prosecutor also used Steelman's silence as evidence of guilt during rebuttal when he argued that Steelman had "had a chance" to explain himself to Wittich and to tell him who else had been involved, but did not.

{¶18} Next, the state argues that Steelman did not remain silent, despite his statements that he wanted an attorney and would not answer questions, and therefore the Wittich interview was properly played for the jury. Putting aside *Miranda*, parts of the interview were clearly admissible—i.e. Steelman's admission that he knew $10,000 had been stolen, his statement that he had been high on the night in question, and his contention that Callaway wasn't involved—but other parts of the interview clearly were not, and those portions should have been redacted. *See, e.g., Whitaker* at ¶ 34 (where a firearm and Hydrocodone pills were found in defendant's car, officer properly testified that defendant admitted that the pills were his, but officer should not have been permitted to testify that, when asked about the firearm, the defendant stated he didn't want to incriminate himself).

{¶19} We hold that the failure to redact the offending statements was error.

### Callaway's Statement

{¶20} In his second assignment of error, Steelman contends that the trial court erred by admitting Callaway's statement, "There's a lot of stuff in there [Callaway's pickup truck] that Steelman stole from Ohio."

{¶21} The trial court admitted Callaway's statement under the excited utterance exception to the hearsay rule. We review the trial court's decision for an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2); *See State v. Wallace*, 37 Ohio St.3d 87, 88, 524 N.E.2d 466 (1988). Such statements are admissible because they are the product of reactive, not reflexive, thinking, and therefore carry

guarantees of trustworthiness. *State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993).

{¶22} Here, the trial court determined that the startling event was the overdose, stating "We've got a person on the side of the road who is unconscious, a 9-1-1 call has come in, this officer indicates that somebody is overdosed, and we've got an excited person standing there by the side of the road." The contents of Callaway's truck didn't relate to Steelman's overdose. Callaway's declaration inculpating Steelman and exculpating himself was made after medical personnel had arrived and revived Steelman, was clearly self-serving, and was not the type of "reactive" statement contemplated by Evid.R. 803(2). It was therefore admitted in error.

{¶23} Steelman next argues that the admission of Callaway's hearsay statement violated his Sixth Amendment right to confront the witnesses against him. Having already determined that the statement was admitted in error, this argument is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### Prosecutorial Misconduct

{¶24} In his third assignment of error, Steelman argues that the assistant prosecuting attorney made improper remarks during closing argument that resulted in an unfair trial.

{¶25} The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Prosecutors are given wide latitude during closing to argue what the evidence has shown, and to draw reasonable inferences from it. *Id.* at 166. "Wide latitude" does not include "insinuations and assertions calculated to mislead" or "personal beliefs or opinions

regarding the guilt of the accused * * *." *Id.* Further, the state "may not allude to matters not supported by admissible evidence." *Id.*

### *Improper Comments on Steelman's Silence*

{¶26} Here, the prosecutor stated, "If someone else had stolen that sack of money he would have told Det. Wittich 'I don't know how much was in there, Larry gave it to me.' " The prosecutor also argued during rebuttal that Steelman had "had a chance" to explain himself to Wittich and to tell him who else had been involved, but did not. Defense counsel did not object, so we apply a plain error standard of review. Neither of these remarks was supported by admissible evidence. We therefore hold that there was obvious error. *See id*; *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459*, 38 N.E.3d 860, at ¶ 21-22; *State v. Wogenstahl*, 75 Ohio St.3d 344, 357, 662 N.E.2d 311 (1996).

### *"Two-Bit Junkie"*

{¶27} Steelman next takes issue with the assistant prosecutor referring to him as a "two bit junkie," "two-bit addict," "two-bit heroin addict," and "junkie," as well as "some ya-hoo," and a "vindictive, violent individual." There was no objection to these comments.

{¶28} Both parties may be "colorful or creative" during closing argument, provided comments are supported by the evidence. *State v. Brown,* 38 Ohio St.3d 305, 317, 528 N.E.2d 523 (1988). Steelman admitted that he had been high the night of the burglary, and it is undisputed that he had overdosed just hours after the burglary occurred. In regard to the "violent vindictive" statement, in one of the jailhouse phone calls Steelman threatened several times that others he believed had been involved in the burglary would "fucking pay." Thus, the prosecutor's comments, while colorful, were acceptable inferences drawn from facts in evidence. *See State v.*

*Tibbetts,* 92 Ohio St.3d 146, 168, 749 N.E.2d 226 (2001) (referring to defendant as a "trained killer" was fair comment on the evidence); *State v. Nields,* 93 Ohio St.3d 6, 37, 752 N.E.2d 859 (2001) (argument that the defendant was a "mean-spirited derelict" and an "unemployed killer" were not improper where supported by the record).

### *Comments on Credibility*

{¶**29**}  Steelman next asserts that the prosecutor expressed his personal belief as to Steelman's credibility and the defense's overall theory of the case.

{¶**30**}  A prosecutor's statement on witness credibility is improper if it implies knowledge of facts outside the record or places the prosecutor's personal credibility at issue.  *State v. Keene*, 81 Ohio St.3d 646, 666, 693 N.E.2d 246 (1998). However, a prosecutor may state his or her opinion if supported by the evidence.  *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶ 154. For example, a "prosecutor may comment upon the circumstances of witnesses in their testimony" and may argue "that these circumstances make the witnesses more or less believable and deserving of more or less weight." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.).  A prosecutor may not state that the defendant is a liar, but "may suggest that the evidence demonstrates the defendant is lying, scheming, or has ulterior motives." *State v. Irwin,* 7th Dist. Columbiana No. 11–CO–6, 2012-Ohio-2704, ¶ 116, citing *State v. Kroger,* 12th Dist. Clermont No. CA99–05–050, 2000 WL 342130, *2 (Apr. 3, 2000).

{¶**31**} Steelman argues that the prosecutor personally vouched for the credibility of witnesses and impermissibly injected his personal opinion as to what the evidence showed by saying: (1) "I love" Steelman's explanation concerning statements in the jailhouse calls and that Steelman's explanation "makes no sense to

me"; (2) "the other thing I loved" was Steelman's phone call on July 22, 2016; (3) "That's the other thing I love about this case"—that even if others were involved, Steelman could still be guilty of complicity; (4) "But this I know for a fact that he left that Pepsi can there with his DNA on it. And I know for a fact that he is the one that was caught with the property in his possession a mere three or four hours after these offenses occurred"; (5) "It's hard to respond to something like that," referring to Steelman's closing argument, "I'll be honest with you. It is so ridiculous. Seriously."; (6) defense counsel's implication that a March 2017 date on the Pepsi can found in the Hayeses' basement meant that the can was made in March 2017—and therefore post-dated the burglary and was planted—was "misleading"; (7) "I love" defense counsel's argument that the Pepsi can came from the garbage and was used to set Steelman up; and (8) "another beauty" that "makes no sense whatsoever" was the theory that Callaway was trying to dump Steelman's dead body at the side of the road and frame him for the burglary.

{¶32} Defense counsel objected only to the prosecutor's argument on whether the Pepsi can was from the garbage, but did not object on the ground currently raised. We therefore review for plain error.

{¶33} Most of the prosecutor's comments that he "loved" certain aspects of the case, his "another beauty" statement, and his statement that defense counsel's theory of the evidence "made no sense whatsoever" were not tantamount to an expression of his personal belief regarding Steelman's guilt. Instead, they can be fairly characterized as the prosecutor arguing that the inferences that could be drawn from the evidence made the defense's theory less believable and undeserving of much weight. These statements were therefore not beyond the bounds of a proper closing argument. One of these comments—that the prosecutor "loved" that

Steelman could be found guilty of complicity even if he was not the principle offender—carries no suggestion that the prosecutor was arguing that he personally believed Steelman was guilty.

{¶34} The prosecutor should not have argued that he knew "for a fact" that Steelman left the Pepsi can in the Hayeses' basement, and that he knew "for a fact" that Steelman was caught with the Hayeses' property shortly after the burglary was reported. These statements placed the prosecutor's personal credibility at issue, and may have suggested to the jury that the prosecutor knew things about the case that the jury did not. They were clearly improper.

{¶35} The prosecutor's statements on rebuttal that Steelman's closing argument was "ridiculous" and that defense counsel's Pepsi can date insinuation was "misleading" was a fair response to defense counsel's closing argument. *See State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 135 (prosecutor's statement on rebuttal that defense counsel's argument was "ludicrous" was not improper), citing *State v. Martin*, 6th Dist. Erie No. E–11–020, 2013-Ohio-973, ¶ 42 (prosecutor's references to defendant's story to police as "ridiculous and nonsense" borne out by the evidence). The prosecutor's comments fairly pointed out perceived weaknesses in Steelman's closing argument.

### *Misstatement of the Law*

{¶36} Next, Steelman contends that the prosecutor committed misconduct by stating that, once the jury began deliberations, "the presumption of innocence is no longer with him * * * it's up to you to determine if the State has met its burden of proof." This was clearly improper. Defense counsel objected. The trial court sustained the objection and immediately instructed the jury that Steelman "is still presumed innocent unless and until you find that the defendant is guilty because the

13

State has proved it beyond a reasonable doubt." The prosecutor subsequently admitted to the jury that he had misstated the law. The jury was properly instructed regarding the state's burden of proof before they began deliberations. We presume the jury followed the trial court's instructions. *See Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. We therefore hold that Steelman was not prejudiced by this misstatement.

### *Facts not in Evidence*

{¶37} Finally, Steelman contends that the prosecutor argued facts not in evidence. The prosecutor stated during rebuttal, "You don't think Shawn [the Hayeses' grandson] at some point told him [Steelman], hey, my grandparents have a safe full of money in the basement." This was a fair response to defense counsel's argument during closing that Steelman didn't know there was a safe in the Hayeses' basement and that others did—a point that defense counsel discussed at length. Hence, the defense opened the door to the state's rebuttal argument. There was no misconduct. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 217 (prosecutor has wide latitude to respond to arguments made by defense counsel during closing).

### *Reversible Error Analysis*

{¶38} Having found error in (1) the admission of those parts of the Wittich interview that violated Steelman's Fifth Amendment right against self-incrimination; (2) the admission of Callaway's hearsay statement; and (3) several of the prosecutor's comments during closing argument, we must determine whether these errors require us to reverse Steelman's convictions.

### *Plain Error Determination*

{¶39} We review the Fifth Amendment violation and the improper closing argument comments, except for the prosecutor's misstatement of the law—which we have already determined was not prejudicial—to determine whether these errors affected the outcome of Steelman's trial, resulting in plain error. *See Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240.

{¶40} Steelman argues that the state's case here was weak, and contends that the jury's note stating that they could not come to a verdict on the burglary charge is proof of its weakness. We disagree. Police discovered Steelman with the stolen goods within hours of the burglary, Steelman knew where the Hayeses' missing documents could be found, he knew that $10,000 had been stolen, he discussed the denominations of the stolen dollar bills, he told the Hayeses' son to tell Davey Hayes that Steelman was "sorry," and Steelman's DNA was found on a Pepsi can in the Hayeses' basement close to the safe. Because the evidence of Steelman's guilt is overwhelming absent the evidence of his silence and the improper closing statements, we hold that there was no plain error.

### *Harmless Error Determination*

{¶41} We review the admission of Callaway's hearsay for harmless error. The question is whether the hearsay was prejudicial, and if so, whether Steelman's "substantial rights" were affected warranting a new trial. *See* Crim.R. 52(A); *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27-32.

{¶42} Callaway's statement was no doubt prejudicial. Callaway directly implicated Steelman in the crimes for which he was on trial. Our analysis therefore focuses on whether, absent Callaway's statement, there was overwhelming evidence of Steelman's guilt. *See Morris* at ¶ 29.

**{¶43}** As stated above, there was overwhelming independent evidence of Steelman's guilt. The error in the admission of his statement was harmless beyond a reasonable doubt.

### Conclusion

**{¶44}** We overrule all assignments of error. The trial court's judgment convicting Steelman of burglary and receiving stolen property is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **DETERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.