[Cite as *State v. Shelton*, 2018-Ohio-3895.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170547 |
| | | TRIAL NO. B-1607181 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DAVET SHELTON, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 26, 2018


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    Defendant-appellant Davet Shelton has appealed from the trial court's entry convicting him, following a jury trial, of aggravated robbery, felonious assault, and theft from an elderly person and sentencing him to an aggregate term of 20 years' imprisonment.

{¶2}    In five assignments of error, Shelton argues that the trial court erred by failing to grant his motion for a continuance, that the trial court admitted evidence in violation of Evid.R. 404(B), that the trial court erred in allowing the victim to make an in-court identification, that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the trial court violated R.C. 2941.25 by imposing multiple sentences on allied offenses of similar import.

{¶3}    Because the offenses of aggravated robbery and theft from an elderly person were allied offenses of similar import, we find that the trial court erred by imposing separate sentences for each offense.  But the judgment of the trial court is otherwise affirmed.

### Factual Background

{¶4}    On June 24, 2016, 87-year-old James Hayes was attacked and robbed in the parking lot of a LaRosa's restaurant in the Corryville area.  A grand jury returned an indictment charging Shelton with the following offenses relating to the attack on Hayes:  five counts of aggravated robbery, four counts of felonious assault, one count of theft from an elderly person, and two counts of theft.

{¶5}  The following evidence was adduced at the jury trial.  Hayes testified that on the date of the offenses, he was scheduled to work at the LaRosa's in Corryville.  He arrived in his white Hyundai and parked in front of the restaurant at approximately 3:30 a.m. to meet a delivery truck.  Surveillance videos taken from neighboring businesses show that while Hayes sat in his parked car, a blue Nissan drove past him two times and then parked across the street from him.  An African-American male wearing black pants, a white tank top, a ball cap, and a white towel draped around his neck exited from the blue Nissan and walked past Hayes's car before returning to the vehicle and driving away.  The blue Nissan drove past Hayes's vehicle for a third time just minutes later.

{¶6}  The surveillance videos then show a similarly dressed African-American male walk up from behind Hayes's car and stand next to it for a moment before walking away.  The person in the video was wearing a black shirt or sweatshirt, but still had a white towel draped around his neck.

{¶7}  A short while later, the videos show an African-American male wearing black pants, a black sweatshirt, and a red ball cap, walk up and stand next to Hayes's car for a period of time.  This person was carrying what appeared to be a red gasoline container.

{¶8}  Hayes testified that he did not remember seeing the blue Nissan drive by, but that he did recall an individual standing next to his car for several minutes.  When the delivery truck arrived, Hayes drove his car to the lot behind the restaurant, where he was attacked.  The attack on Hayes was captured on a security camera, and it shows that an African-American male, wearing black pants and a black sweatshirt, and carrying a red gasoline container, approached Hayes just after he exited from his

3

vehicle. The assailant threw two rocks at Hayes and his vehicle, one of which broke a rear window on the car. He then struck Hayes on his back with a brick, knocking Hayes to the ground. While Hayes was on the ground, the assailant used Hayes's cane to beat him, punched him in the face, rifled through his pockets, and drove away in Hayes's car.

{¶9} Hayes provided an inventory of the items that had been in his stolen car, including a pool stick, bowling balls, a chair, CDs, a vacuum, and jumper cables. His wallet was also stolen from his person. Hayes suffered much bruising on his back and missed several days of work because of the pain. While testifying, he identified Shelton as his assailant.

{¶10} Hayes's vehicle was recovered from a nearby street the following day. A mask and a Swisher Sweets cigar wrapper were found in the vehicle. Hayes testified that these items did not belong to him.

{¶11} A palm print belonging to Don August Kemper was found on Hayes's car. Cincinnati Police Officer Christopher Bihl, who had investigated these crimes, testified that he had interviewed Kemper and that Kemper was too large to be the person on the surveillance video. Kemper told the police that someone named "David" had picked him up in a white car and driven him around. After speaking with Kemper's mother Denise Arnold, Officer Bihl determined that Shelton was the "David" referenced by Kemper.

{¶12} Both Kemper and Arnold testified at trial. Arnold explained that Shelton lived next door to her, and that Kemper had always called him "David," instead of "Davet." Kemper testified that Shelton picked him up one morning in a white car. Kemper admitted that he had previously told the police that Shelton had

taken the car from a man who he had "[gotten] into it with" and then knocked out. After they drove around in the stolen car, Shelton parked the car and left Kemper sitting in it. Shelton later returned driving a blue car, which he used to take Kemper home.

{¶13} Several weeks after the attack on Hayes, following a police pursuit, Shelton was stopped while driving a blue Nissan with North Carolina license plates numbered DHD4542. Inside the car, officers discovered Swisher Sweets wrappers, a red hat similar to the hat worn in the surveillance video, a white towel, a Scarface t-shirt, CDs belonging to Hayes, a Dirt Devil vacuum, a chair, and bullets. A personalized license plate from Hayes's car was also found in the blue Nissan.

{¶14} During a search of Shelton's apartment, officers found a pool stick, boxes of ammunition, shotgun shells, and a Swisher Sweets cigar wrapper. In the basement storage unit assigned to Shelton, officers found a red gas container and a red bag containing jumper cables. Officer Bihl testified that both the blue Nissan and Shelton's apartment were cluttered and had items scattered everywhere.

{¶15} Officer Bihl searched Shelton's Facebook page, where he found various pictures that collectively depicted Shelton with a cigar in his mouth, Shelton wearing a towel around his neck, and Shelton wearing a Scarface t-shirt similar to the shirt found during the search of the blue Nissan.

{¶16} Precious Wright, Shelton's former girlfriend, testified that she had rented a blue Nissan Sentra with a North Caroline license plate numbered DHD4542 for Shelton to drive. She was unaware if Shelton allowed anyone else to drive the car.

{¶17} Joan Burke, a serologist with the Hamilton County Coroner's laboratory, testified that she found Shelton's DNA on both a mask and a Swisher Sweets cigar wrapper recovered from Hayes's vehicle.

{¶18} Shelton presented testimony from Officer Patrick Moran, a civilian crime scene investigator with the Cincinnati Police Department. Officer Moran had received prints lifted from Hayes's car during the investigation and had run the prints in an Automated Fingerprint Identification System ("AFIS") database. The AFIS database returned a hit on the lifted prints, matching them to prints belonging to Kemper.

{¶19} The jury found Shelton guilty of all offenses. After merger, Shelton was ultimately convicted of one count of aggravated robbery, one count of felonious assault, and theft from an elderly person. He was sentenced to 11 years' imprisonment for the aggravated-robbery conviction, eight years' imprisonment for the felonious-assault conviction, and one year's imprisonment for the theft-from-an-elderly-person conviction. These sentences were made consecutive, resulting in an aggregate sentence of 20 years' imprisonment.

### Denial of Motion for a Continuance

{¶20} In his first assignment of error, Shelton argues that the trial court erred in failing to grant his motion for a continuance.

{¶21} After the jury was selected, the state disclosed to defense counsel that fingerprints belonging to Kemper had been found on Hayes's car, and that it did not intend to call the criminalist who had identified the fingerprints to testify. The state had not disclosed this information at an earlier date because it had previously filed, and been granted, a motion for nondisclosure under Crim.R. 16, in which the trial

court ordered that the identification of Kemper could be withheld until the day of trial. After receiving this information, defense counsel subpoenaed records relating to the fingerprints and updated his witness list to include the criminalist. The state had indicated to defense counsel that it believed counsel would receive the requested materials later that day. Before opening statement, counsel asked for a two-day continuance because he did not want to begin the case without these materials. Counsel was worried he would not receive the information and that he would need time to review it. He also wanted to subpoena the criminalist for trial. The trial court denied the motion, noting that counsel was to receive the material that day, which would give him time to review it.

{¶22} A trial court has broad discretion in determining whether to grant a continuance. *State v. Myers*, __ Ohio St.3d __, 2018-Ohio-1903, __ N.E.3d __, ¶ 92; *State v. Brice*, 2017-Ohio-974, 86 N.E.3d 896, ¶ 10 (1st Dist.). A defendant must show that she or he was prejudiced by the trial court's failure to grant a requested continuance. *Myers* at ¶ 92. An abuse of discretion occurs where the trial court's decision is unreasonable, arbitrary, or unconscionable. *Brice* at ¶ 10, citing *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶23} Following our review of the record, we cannot find that the trial court abused its discretion in denying Shelton's motion for a continuance. The trial court, when denying the requested continuance, indicated that because Shelton would receive the requested paperwork and materials later that day, defense counsel would have time to review and prepare while the state put on its case-in-chief. The trial court did not discount defense counsel's reason for requesting the continuance, but

felt that a continuance was not necessary for counsel to adequately represent Shelton.

{¶24} We further hold that Shelton suffered no prejudice from the denial of his continuance, as his counsel received the requested information and called the criminalist who had identified the fingerprints to testify. Moreover, Officer Bihl had explained that Kemper's palmprints had led him to investigate Shelton. And counsel was also able to cross-examine Kemper as to why his prints had been found on Hayes's car.

{¶25} The first assignment of error is overruled.

### Evid.R. 404(B)

{¶26} In his second assignment of error, Shelton argues that the trial court erred in admitting photographs depicting ammunition in violation of Evid.R. 404(B).

{¶27} Over Shelton's objection, the trial court allowed the state to introduce photographs taken during searches of Shelton's apartment and the blue Nissan. The objected to photographs from the vehicle included pictures depicting a bullet hole, bullets, and shell casings. The challenged photographs from the apartment included pictures showing boxes of ammunition, bullets, shell casings, shotgun shells, and pellet guns. Shelton argues that these photographs were admitted in violation of Evid.R. 404(B) and that they led to an inference that he was violent and had a dangerous character. In support of his argument, he relies on *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821. In *Thomas*, the court reversed the appellant's convictions after determining that evidence of weapons not used in the commission of the underlying offenses had been admitted to portray appellant as a person of violent character who had acted in conformity with that trait in violation of

Evid.R. 404(B) and R.C. 2945.59, and had been so prejudicial that there was a reasonable probability that admission of the evidence had affected the outcome of the trial. *Id.* at ¶ 48.

{¶28} While Shelton argues on appeal that these photographs were admitted in violation of Evid.R. 404(B), he objected below on the grounds that the photographs were irrelevant and were more prejudicial than probative because no gun had been used in the commission of the offenses against Hayes. Typically we review the trial court's admission of evidence for an abuse of discretion. *See State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 28 (1st Dist.); *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 53. But because Shelton failed to raise an Evid.R. 404(B) objection below, we review the argument for plain error. *See State v. Steelman*, 1st Dist. Hamilton No. C-170337, 2018-Ohio-1732, ¶ 15. Plain error is "(1) an error, (2) that is obvious, and (3) that affected the outcome of the trial." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *see* Crim.R. 52(B).

{¶29} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶30} The state argues that because the photographs depicted ammunition and shell casings strewn about both Shelton's apartment and the blue Nissan, the similar nature of the items in the cluttered spaces established Shelton's possession of the blue Nissan. Since this vehicle is linked to the crime, it is evidence of Shelton's

identity as the perpetrator of the offenses against Hayes. The state also introduced for this same purpose photographs showing distinctive cigar wrappers strewn about the blue Nissan and apartment. We find that the evidence was admissible as proof of identity under Evid.R. 404(B).

{¶31} Shelton further argues that if the evidence was used to link him to the Nissan, it was more prejudicial than probative under Evid.R. 403. We disagree. Shelton disputed his identity as the perpetrator of the offenses and argued he did not drive the blue Nissan that day. His counsel further argued that Kemper could have committed the crimes and driven the Nissan that day. Linking Shelton to the blue Nissan was relevant to establishing his identity as Hayes's attacker. The probative value of this evidence was not substantially outweighed by any danger of unfair prejudice. No error, plain or otherwise, resulted from the trial court's admission of the evidence.

{¶32} The second assignment of error is overruled.

### *In-Court Identification*

{¶33} In his third assignment of error, Shelton argues that admission of the victim's in-court identification constituted plain error and deprived him of due process. Shelton concedes that because he failed to object to the identification below, we review for plain error. *Steelman*, 1st Dist. Hamilton No. C-170337, 2018-Ohio-1732, at ¶ 15; *Myers*, ___ Ohio St.3d ___, 2018-Ohio-1903, ___ N.E.3d ___, at ¶ 125.

{¶34} While testifying, Hayes identified Shelton as his attacker. Shelton argues that Hayes's identification was not based upon an independent observation at the scene and was unreliable.

{¶35} An in-court identification will be admissible "if the identification comes from 'some independent recollection and observation of the accused by the witness' as established under the totality of the circumstances." *State v. Norman*, 137 Ohio App.3d 184, 201, 738 N.E.2d 403 (1st Dist.1999), quoting *State v. Jackson*, 26 Ohio St.2d 74, 77, 269 N.E.2d 118 (1971); *State v. Williams*, 1st Dist. Hamilton No. C-081148, 2010-Ohio-1879, ¶ 8. "Reliability is the linchpin in determining the admissibility of identification testimony." *State v. Moody*, 55 Ohio St.2d 64, 67, 377 N.E.2d 1008 (1978), quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). When considering the reliability of an in-court identification under the totality of the circumstances, relevant factors to consider include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.*, quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see Norman* at 201.

{¶36} Here, Hayes testified that he had not had much opportunity to look at his attacker, and he had described his assailant as having a height of 5'9", whereas Shelton is 6'4". Hayes identified Shelton with certainty at the jury trial, which occurred approximately one year after the attack. He had also identified Shelton as his attacker during a pretrial deposition. Hayes had failed to pick Shelton out of a photographic lineup presented to him several weeks after the attack, but he explained that he had not been wearing his glasses when viewing the lineup.

{¶37} Although several of these factors call into question the reliability of Hayes's identification, following our review of the record we find that no plain error

resulted from Hayes's in-court identification of Shelton. Further, in light of the overwhelming evidence of Shelton's guilt, as explained in our analysis of the fourth assignment of error, we cannot find that the outcome of the proceedings would have been different but for the in-court identification. *See Williams* at ¶ 9.

### *Sufficiency and Weight*

{¶38} In his fourth assignment of error, Shelton argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. He specifically argues that the state failed to establish his identity as the perpetrator of the offenses.

{¶39} The record contains sufficient evidence that Shelton committed the offenses against Hayes. Prior to the attack on Hayes, a blue Nissan had driven past him multiple times while he waited for the delivery truck in front of LaRosa's. Ample evidence linked Shelton to a blue Nissan: Shelton's former girlfriend Precious Wright testified that she had rented a blue Nissan for him to drive; he was arrested in that same blue Nissan; he had driven Kemper around in a blue vehicle; the blue Nissan was found in the same condition as Shelton's apartment (cluttered, with ammunition and cigar wrappers scattered around); and Shelton's personal items were found in the blue Nissan after his arrest. Additionally, the person driving the blue Nissan on the morning of the attacks had been wearing a white towel around his neck. A white towel was found in the blue Nissan following Shelton's arrest. And Officer Bihl discovered photos of Shelton on Facebook in which he wore a white towel around his neck. A red hat similar to the hat worn by the suspect in the surveillance video was also found in the blue Nissan.

{¶40} In addition to linking him to the Nissan, overwhelming evidence established that Shelton was Hayes's attacker. Searches of both the Nissan and Shelton's apartment revealed items that had been stolen from Hayes, including Hayes's CDs, vacuum cleaner, jumper cables, and pool stick. A license plate for Hayes's vehicle was found in the blue Nissan when Shelton was arrested. A mask and a Swisher Sweets cigar wrapper containing Shelton's DNA had been found in Hayes's vehicle when it was recovered. Further, the jury heard testimony from Kemper that Shelton had picked him up in a white car that he admitted taking from a guy he had "[gotten] into it with."

{¶41} We find that after viewing all probative evidence and reasonable inferences in the light most favorable to the prosecution, the jury could reasonably have determined that Shelton committed these offenses and found the elements of the offenses proved beyond a reasonable doubt. *See State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶42} We further find that Shelton's convictions were not against the manifest weight of the evidence. The jury was presented with testimony that Kemper's prints had been found on Hayes's car. But it also heard Kemper's explanation of why he had been in the car, along with Officer Bihl's testimony that Kemper's build did not match that of the person captured on the surveillance video. The jury was in the best position to judge the credibility of the witnesses, and it was entitled to reject any argument that Kemper had committed these offenses. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury did not lose its way and commit such a manifest miscarriage of justice in

finding Shelton guilty that his convictions must be reversed. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶43} Shelton's convictions were supported by both the sufficiency and the weight of the evidence. The fourth assignment of error is overruled.

### *Allied Offenses*

{¶44} In his fifth assignment of error, Shelton argues that the trial court violated R.C. 2941.25 by imposing multiple sentences on allied offenses of similar import that were not committed separately or with a separate animus. Because Shelton raised this argument before the trial court, and because the court made a merger determination, we conduct a de novo review. *State v. Corcoran*, 1st Dist. Hamilton No. C-160627, 2017-Ohio-7084, ¶ 15; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

{¶45} Under R.C. 2941.25, separate sentences may be imposed on a defendant whose conduct supports multiple offenses if the offenses were dissimilar in import, were committed separately, or were committed with a separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus; *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76.

{¶46} Shelton argues that his convictions for the offenses of felonious assault and theft from an elderly person should have merged into his conviction for aggravated robbery.

{¶47} We first consider whether Shelton could have been separately sentenced for the offenses of aggravated robbery and felonious assault. Shelton was convicted of aggravated robbery pursuant to R.C. 2911.01(A)(1), which provides that:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶48} He was convicted of felonious assault under R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶49} Following our review of the record, we find that these two offenses were committed with a separate animus. We have explained that animus, or one's immediate motive or purpose, is determined by "dissecting the facts and circumstances in evidence, including the means used to commit the offense." *Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, at ¶ 86.

{¶50} During the attack in this case, Shelton threw two rocks at Hayes and his vehicle, and then struck Hayes in the back with a brick, which knocked him to the ground. While Hayes, an 87-year-old man, was on the ground, Shelton beat Hayes with Hayes's own cane and punched him in the face. The force used during the felonious assault was much more than was necessary to effectuate the aggravated robbery, and it demonstrated that Shelton acted with a specific intent to harm Hayes, separate from any animus to rob him. *See Bailey* at ¶ 87; *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 62 (holding that "where a defendant uses greater force than necessary to complete aggravated robbery, he

shows a separate animus."). Because these offenses were committed with a separate animus, the trial court did not err in imposing separate sentences for each offense.

{¶51} We reach a different conclusion with respect to the offenses of aggravated robbery and theft from an elderly person. Shelton was convicted of theft from an elderly person in violation of R.C. 2913.02(A)(4), which provides that:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

\*     \*     \*

(4) By threat.

To find Shelton guilty of this offense, the jury additionally had to find that the state had proven that Hayes was 65 years of age or older.

{¶52} The record establishes that after knocking Hayes to the ground and beating him, Shelton rifled through Hayes's pockets, took his wallet, grabbed his keys, and then drove away in Hayes's car. No temporal break occurred between the commission of the theft and aggravated-robbery offenses, *see State v. Wright*, 2d Dist. Montgomery No. 24276, 2011-Ohi0-4874, ¶ 78-79, and the offenses were committed as part of the same course of conduct with a single state of mind. *See State v. Ayers*, 12th Dist. Warren Nos. CA2010-12-119 and CA2010-12-120, 2011-Ohio-4719, ¶ 37 (holding that appellant's convictions for aggravated robbery and grand theft were committed with the same conduct where appellant had broken into a Save-a-Lot store, stolen money from the safe, locked employees in a freezer, taken car keys from an employee, and fled in an employee's car).

{¶53} We further find that the offenses of aggravated robbery and theft from an elderly person or disabled adult were not dissimilar in import. In *Ruff*, the court explained when offenses are of dissimilar import, stating that "offenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 21. Here, Shelton's conduct "victimized one person in a single event, thus the harm was not separate and distinct." *State v. Wright*, 1st Dist. Hamilton No. C-170278, 2018-Ohio-877, ¶ 3 (finding that two theft offenses were of similar import where the appellant had broken into a vehicle and stolen two credit cards from the same person).

{¶54} We additionally note that the trial court correctly merged Shelton's two theft convictions with the aggravated-robbery conviction. The reasoning that applies to theft applies equally to theft from an elderly person. The conduct of the perpetrator is the same; it is the victim's age that enhances the offense. If theft is an allied offense to aggravated robbery, so is theft from an elderly person. The offenses of theft and theft from an elderly person were committed with the same conduct. The only distinguishing factor between the offenses is the age of the victim.

{¶55} Because the offenses of aggravated robbery and theft from an elderly person were allied offenses of similar import, we find that the trial court erred by imposing separate sentences for each offense. The fifth assignment of error is sustained in part and overruled in part.

### *Conclusion*

{¶56} Because the offenses of aggravated robbery and theft from an elderly person were allied offenses of similar import, we vacate the sentences imposed for

those offenses. This matter is remanded to the trial court for the state to elect which allied offense to pursue for sentencing. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part, sentences vacated in part, and cause remanded.

**MOCK, P.J.,** and **DETERS J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.